## LANE vs. KINGSBERRY.

1. After a judgment has been entered up on a verdict, although strictly such judgment should be set aside before a new trial is had, yet, if, on motion, the verdict is set aside and a new trial granted and had, the judgment will be deemed to have been set aside.

2. Although exceptions must be taken to the decision of the court at the time such decision is made, it is not necessary that a bill of exceptions should then be made out and signed.— One bill of exceptions made at the conclusion of a case is sufficient to embrace all the exceptions taken during the trial.

3. A voluntary conveyance is not *per se* fraudulent as against creditors prior or subsequent.— The *bona fides* of every such conveyance is a question of fact for the jury, under all the circumstances attending its execution.

4. Where a husband makes a voluntary conveyance for the benefit of his wife, a precedent conveyance made by him for her benefit is competent evidence on the question of the good faith of the latter.

5. To determine the validity of a voluntary conveyance as against creditors, every circumstance tending to shew the pecuniary condition of the grantor at the time of such conveyance is admissible.

6. Although evidence offered may not of itself be sufficient to establish a defence, it should be admitted if it establish a link in the chain of evidence. The weight of such evidence must be left to the jury, and cannot be decided by the court.

## ERROR to St. Louis Circuit Court.

### Statement of the Case.

This is an action of repleven, brought by the defendant in error against the plaintiff in error in the St. Louis Circuit Court on the 22nd September, 1843, for two slaves, Mary and Julia. On the same day, the writ was served and the slaves delivered to the plaintiff by the sheriff. The defendant pleaded, in the first instance, the general issue, and afterwards, by leave of court, another plea setting up property in the slaves in himself. The plaintiff filed his replication traversing this plea of property in defendant. The cause being at issue, it was brought on for trial on the

13th June, 1844, when the defendant withdrew his plea of the general issue and went to trial on the plea of property. At this trial, a verdict was found for the defendant, and a formal judgment was immediately, but improperly and irregularly, entered up by the clerk upon the finding of the jury. Afterwards, and in due time, the counsel of plaintiff filed his motion to set aside this verdict and for a new trial. This motion was sustained by the court below.

On the 7th June, 1845, a second trial was had, and the jury being unable to agree upon a verdict, were discharged.

Afterwards, on the 3rd February, 1846, a third trial was had, and the jury found a verdict for the plaintiff. The defendant then filed his motion to set aside this verdict, but the Circuit Court overruled his motion, and the defendant excepted and brought his case by writ of error to this Court.

On the last trial of the cause, the defendant, Lane, gave in evidence the record of a judgment in the St. Louis Court of Common Pleas in favor of defendant against A. G. Edwards, on a note of A. G. Edwards & Co., dated the 6th August, 1842, payable one day after date, for $1,827 12, bearing ten per cent. interest. Process was served on the 14th October, 1842, and judgment rendered on the 13th April, 1843. Also, a record from the same court of a judgment in favor of the plaintiff against Lucien D. Cabanne, on the same note on which the preceding judgment was rendered against Edwards. This suit was commenced at the November term, 1842, by attachment against the defendant therein as being a non-resident, and the slaves in question were levied upon. After judgment had been obtained, the slaves were sold by the sheriff on execution, and bought in at the sale by the plaintiff, Lane, for $300. At the time of the sale, the plaintiff, Kingsberry, gave public notice to all present and to said Lane that he claimed the slaves as his property.— Upon the sale, they were delivered by the sheriff to the defendant, Lane, and were immediately afterwards replevied in this action by Kingsberry.

The defendant then proved by J. B. Sarpy that the slaves were brought from North Carolina by L. D. Cabanne, when he brought his wife out to Missouri, they having been given to her by her father as body servants and having been raised with her.

Sarpy also testified that he was one of the executors of John P. Cabanne, deceased, and that on a settlement with A. G. Edwards and L. D. Cabanne, as distributees of said decedent's estate, they had each credited the estate with $10,000 or $12,000, and still there was more personal property to be distributed, and also a considerable landed estate, of which said L. D. Cabanne would be entitled to a portion.

The defendant, Lane, then closed his case.

Thereupon, the plaintiff, after having duly proved its execution and delivery, gave in evidence a bill of sale or deed of the two slaves, dated the 10th May, 1841, and acknowledged on th 12th, and recorded on the 22nd, executed by Lucien D. Cabanne to the plaintiff, in trust for Cabanne's wife. The deed expressing on its face that it was made for the money consideration of $1,00 and other considerations, and that the slaves were the same that had been given the *cestui que trust* by her father on her intermarriage with said Lucien D.

The plaintiff also proved by U. Rasin that, at the execution of the deed, he had been authorized by the plaintiff to hire out the slaves and collect the hire and pay it over to Mrs. Cabanne, the *cestui que trust,* which he did.

The plaintiff here closed his case.

The defendant then, in rebuttal, called U. Rasin, who proved that, in the fall of 1838, the firm of Edwards, Rasin & Co., which was composed of A. G. Edwards, L. D. Cabanne and H. H. Rasin, commenced business in St. Louis and continued until 1840, when it was dissolved, and thereupon two other firms established—A. G. Edwards & Co., composed of said A. G. E. and L. D. Cabanne, and H. H. Rasin & Co., composed of said H. H. R. and one Ward—the last one of which purchased the stock of Edwards, Rasin & Co., for $15,000. That of this sum, about $10,000 was lost, but afterwards it was replaced by a milling establishment. That at the time of the dissolution, Edwards, Rasin & Co. owed debts, which, however, were contracted for and

*Lane* vs. *Kingsberry.*

represented by the stock on hand. Their debts could not have been due long, as they had paid their debts as they fell due up to the time of the dissolution. Messrs. A. G. Edwards and L. D. Cabanne had put into the concern of Edwards, Rasin & Co. $20,000, and afterwards, L. D. Cabanne had put in a further sum of about $6,000 to liquidate its debts, which amount he received from his father-in-law as a part of his wife's portion. They (Edwards and Cabanne) were putting in capital occasionally during the continuance of the firm. In 1840, the defendant lent the firm $1,486 11, which was paid back, Edwards giving his note therefor.

H. H. Rasin, on the part of the defendant, proved that the firm of H. H. Rasin & Co. had failed, but that the firm of Edwards, Rasin & Co. had done a prosperous business and paid its debts at maturity.

P. D. Tiffany, on part of defendant, proved that he had had professional business with A. G. Edwards, connected with the case of the Floating Dock and Insurance Co. vs. Edwards, Rasin & Co. That part of the execution in the case belonged to Edwards, Rasin & Co., a part to the Floating Dock, and a part to the Citizens' Insurance Company.

Peers testified that he hired Julia from U. Rasin, (understanding she belonged to Mrs. Cabanne) and paid him the hire.

Capt. Casey testified that he hired Mary from said Rasin as the property of Mrs. Cabanne, from whom he received a note authorizing him to pay the hire to said Rasin, which he accordingly did.

Then, in rebuttal of defendant's case, on the part of the plaintiff, A. G. Edwards was called and testified that the greatest part of the Floating Dock judgment belonged to Edwards, Rasin & Co. That the judgment in favor of D. D. Page, against himself and Cabanne, was paid in gold when specie was at a high premium. That all the debts of Edwards, Rasin & Co. were paid, except a small part of a debt due the estate of one Day, which balance was still unpaid only because it had never been called for, but that they were able and ready to pay. Said debt had been paid in instalments as the administrator had demanded it. That Lane's debt had been paid, $100 in money and the remainder in the sale of the negroes in question and of lands in Illinois. That the first entry in the books of the concern to the credit of Lane was in May, 1840, (the amount of it not stated,) at which time there was a debit against him of $200 for store account. The firm paid interest on the money deposited.

Here the plaintiff closed his testimony.

The defendant then offered in evidence the following deeds, which were objected to by plaintiff's counsel, and excluded by the court:

1st. A deed dated 27th April, 1839, from L. D. Cabanne to Lewis V. Bogy, in trust for Mrs. Cabanne, of two tracts of land, one containing 104.88 arpens, the other containing 200 arpens, and both lying in St. Louis county. The deed professes to be a settlement by the husband upon the wife in return for "money and other valuable property" that he had received from her. But there was no proof produced, or offered to be produced, to show what was the value of the land conveyed by the deed.

2nd. A deed of mortgage or of trust from A. G. Edwards to Julia G. Cabanne, widow of the late J. P. Cabanne, and James W. Kingsberry, to secure a note endorsed by said J. P. Cabanne, in his lifetime, for Edwards, Rasin & Co., dated the 1st August, 1840, for $7,000, payable two years after date; and also a note of A. G. Edwards & Co. to said Kingsberry for $500, dated 1st August, 1842, payable one day after date. This deed was executed on the 1st August, 1842.

3rd. A deed of trust from James A. Cox to the trustees of L. D. Cabanne and A. G. Edwards, of one-eighth of the steamer Gulnare, with her tackle, apparel and furniture, to secure the payment of his note to them for $2,587 50, and is dated the 12th February, 1841.

4th. The very deed or bill of sale under which the plaintiff claimed title to the slaves.

5th. A deed by sheriff Brotherton to A. G. Edwards and Thomas J. Beirne, dated 8th December, 1841, of a mill, rectifying distillery, engine house and machinery, and the lot on which these were situated.

6th. A deed of trust from A. G. Edwards and Thomas J. Beirne to the trustees of Berthold & Ewing, dated the 22nd December, 1844.

The defendant then offered in evidence the following records and judgments, which were also excluded by the court:

1st. The Floating Dock and Insurance Company vs. A. G. Edwards, H. H. Rasin and L. D. Cabanne. Process served 17th July, 1841, and judgment 24th February, 1842.

2nd. D. D. Page vs. same defendants. Process served April, 1842; judgment 8th August, 1842.

3rd. L. B. Shaw vs. A. G. Edwards and L. D. Cabanne. Process served 21st June, 1842, only on Edwards, and judgment rendered against him on the 8th August, 1842; satisfied on execution.

4th. Same vs. same. Process served and judgment obtained on same day as in last case. Satisfied on execution.

To which opinion of the court, the defendant excepted.

The court then gave the following instructions, on its own motion, to which the defendant, by his counsel, instantly excepted in writing:

"The plaintiff's right to recover the slaves in question depends upon the validity of the conveyance made by Lucien D. Cabanne to the plaintiff and read in evidence in this case. And the validity of the said conveyance depends upon the facts whether the same was made in good faith and under circumstances which, in law, would justify the said Cabanne in transferring the said slaves to the plaintiff, in trust for the use and benefit of the wife of said Cabanne. If Lucien D. Cabanne, at the time he made the said conveyance, was not indebted to the defendant or to other persons, or if he was indebted to the defendant or others, and at the same time was in solvent circumstances, and the owner of property, exclusive of the slaves in question, fully adequate in value and extent to liquidate and satisfy all of his indebtedness; and if the conveyance of the slaves in question was made in good faith and with no intent to hinder, delay or defraud the creditors existing or subsequent, of the said Cabanne, nor with intent on the part of the said Carbanne to secure to himself, for his own use and benefit, the services and hire of the said slaves, then, in such case and under such circumstances, it was lawful for the said Cabanne to convey the said slaves by said deed, in trust for the benefit and use of his wife. Therefore, if the jurors believe from the evidence that the said conveyance to the plaintiff of the slaves in question was duly executed and made in good faith, by the said Lucien D. Cabanne acknowledged and recorded, and that the said conveyance was not made or contrived with the intent to hinder, delay or defraud the creditors, existing or subsequent, of the said Cabanne, nor with the intent to secure to him, the said Cabanne, the use and benefit of the said slaves, the jurors will find the issue for the plaintiff; but if the jurors shall believe from the evidence that the said conveyance was not made in good faith, or that the same was made or contrived with the intent to hinder, delay or defraud the creditors, existing or subsequent, of the said Cabanne, or made with intent, on the part of said Cabanne, to secure to himself the use and benefit of the said slaves, the jurors will find the issue for the defendant.

"If the jury believe from the testimony that the trust deed of gift which was in evidence was made by L. D. Cabanne with the intent to hinder, delay or defraud his creditors, the said deed is inoperative as a legal conveyance to bar the rights of the defendant, Lane; if the jury also believe from the testimony that the debt due to said Lane existed at the time of making said deed, whether the form of said debt or the evidences of it were or were not afterwards changed."

The defendant then moved the court to give the following instructions:

"If the jury believe from the evidence that the deed of gift which is in evidence was made by L. D. Cabanne, with the intent to secure the use of the two slaves for his own benefit, and that in fact the issues, slaves of said slaves, were in whole or in part applied to his benefit, then, as regards the defendant, Lane, the said deed must be considered fraudulent and void.

"That unless possession of the slaves accompanied the deed of gift from Cabanne to Kingsberry, in trust, that is, unless the slaves were actually delivered to Kingsberry under that deed, the said deed is void as to Cabanne's creditors.

"If the jury, upon the whole testimony, believe that Cabanne, by the deed of trust given in

evidence, attempted to give and secure for the use of his wife the two slaves in question, with intent to hinder or delay his creditors, the said deed is void as to Lane, whether the jury do or do not believe that Cabanne was actuated in that transaction by a fraudulent intent."

Which the court refused.

### Bates, *for Plaintiff in error.*

There is a preliminary objection; which, if sustained, will preclude all inquiry into the errors alleged to have occurred at the last trial of the cause—that is,

It was irregular and erroneous to give the last judgment in favor of Kingsberry, because there was and is upon the record a judgment in favor of Lane not reversed nor set aside, and no motion made for that purpose. The motion to set aside the verdict made and sustained, is only an argument that the court below did not intend the first judgment to be binding, but the judgment is not set aside, and can only be set aside by a regular proceeding for that purpose.

And as to the matters occurring at the last trial of the cause, the plaintiff in error submits the following points:

1. It was erroneous to exclude the deed from Cabanne to Bogy, as that deed showed that he had made ample provision for his wife, greatly exceeding the value of her marriage portion, and had thereby placed a large amount of his property beyond the reach of his creditors.

2. It was erroneous to exclude the judgments, &c., against the firm of which Cabanne was a member: because they tend to show the embarrassed condition of Cabanne, and his insolvency in fact; and whether they would have shown it or not, was for the jury to determine.

3. The instructions given in favor of Kingsberry, the plaintiff, were loose and vague, and calculated to mislead; and moreover, left matter of law to the determination of the jury.

4. The instructions moved by the defendant below, were legal and right, and it was error to refuse them.

### Polk, *for Defendant in error.*

1. The court below rightfully excluded the deeds and judgments offered in evidence by defendant Lane.

2. The court committed no error in telling the jury, as it did in effect tell them, if they should find the deed of trust under which plaintiff claimed, was made in good faith, and without intent to hinder, delay, or defraud creditors, and without any secret trust in favor of Cabanne the grantor, that it would be valid even though Cabanne might have been indebted at the time, "if at the same time he was in solvent circumstances, and the owner of property, exclusive of the slaves in question, fully adequate in value and extent to liquidate and satisfy all his indebtedness." Lush vs. Williamson, 5 Ves. 384; Howard vs. Williams, 1 Bailey S. C. Rep. 575; 1 Story's Eq. chap. 7, § 358, 363; Hinde's Lessee vs. Longworth, 11 Wheat. 199; Salmon vs. Bennett, 1 Connect. R. 525; Cadogan vs. Kennett, 2 Cowper, 432.

3. But in the instructions it gave, the Circuit Court in point of fact actually expounded the law to the jury more strongly against the plaintiff than it ought to have done.

4. Again, the Circuit Court also went farther to impeach the plaintiff's bill of sale, than it was either required or justified in going, in this: that it instructs to the effect, (taking the converse of the instruction on the matter of indebtedness by Cabanne,) that if Cabanne, when he made the bill of sale, was indebted, and not possessed of property, exclusive of the slaves in question, fully adequate to the satisfaction of all his indebtedness, then it was not lawful for him to make the bill of sale; or in other words, the bill of sale was void in law; which is tantamount to saying that that state of circumstances rendered the bill of sale void *per se.*

I maintain that the law is not so. On the contrary, I maintain that the law is that such a condition of things does not of itself render the instrument fraudulent *per se*, but in the language of Lord Mansfield, is only an argument of fraud. The real question is, whether the transaction is bona fide, or a mere trick and contrivance. Cadogan vs. Kennett, 2 Cowp. 434; Doe vs. Rutledge, 2 do. 708, et seq.; Sexton vs. Wheaton, 8 Wheat. 229; Hinde's Lesse vs. Longworth, 11 Wheat. 199; Johnson vs. Timmerman. Wend.; 1 Story's Eq. ch. 7, § 362, 363.

5. The court below was right in refusing defendant's first instruction; because, First, this instruction but asserts what the court had once already told the jury on its own motion. Secondly, because the testimony did not justify the assumption in matters of fact, made by the last clause of the instruction. The testimony not only does not show that the issues and hire of the slaves were applied to the grantor's (Cabanne's) benefit, but that on the contrary of this, they were collected by U. Rasin, plaintiff's agent, according to plaintiff's directions, and applied to the benefit of the *cestui que trust*, (Mrs. Cabanne.)

6. The second instruction prayed by defendant, and refused by the court below, is not law as applicable to this case, where the deed of gift is duly acknowledged and recorded as required by the statute. Code of 1835, p. 283, § 4, 5, 6; Shepherd vs. Trigg, 7 Mo. 151; Ross vs. Crutsinger, 7 do. 245; Howard vs. Williams, 1 Bailey S. C. Rep. 575.

Moreover, this instruction likewise was not warranted by the evidence. For the testimony shows that so far from the hypothesis assumed in this instruction being the truth and fact of the case, that the true state of facts was directly the reverse. That the slaves were in very truth delivered to the plaintiff; that he through his agent, U. Rasin, hired them out after they were conveyed, collected the hire, and applied it to the uses of Mrs. Cabanne.

7. The defendant's third instruction, which attempted to impose upon the jury a distinction between the intendment of law upon the words "hinder or delay," and a fraudulent intent in point of fact, ought to have been refused by the circuit court as it was.

8. In conclusion, I submit only a word on the first point taken by counsel of plaintiff in error in this case, to wit: that the record shows a judgment in form in words, in favor of Lane, not set aside or vacated. I submit that that entry upon the record is wholly irregular and unwarranted, and is a mere nullity. By the statute, it was the duty of the clerk merely to have entered the verdict of the jury, and not to have entered up judgment upon that verdict only in one of two cases: first, if no motion for a new trial was made within the four days limited by statute; secondly, if a motion for new trial being made, that motion was overruled by the court.

But in this case a motion for a new trial was both made in due time and sustained by the court; in such case no judgment could have been legally entered at all by the clerk. The motion was exactly in object and scope what in point of law and in point of fact it ought to have been, in the condition of the proceedings in the case.

And the counsel of plaintiff in error acquiesced in the action of the court, and went on to a second and third trial, and struggled for another judgment; although, as he now contends, at the very time he had a valid judgment of the court in his favor.

Scott, J., *delivered the opinion of the Court.*

The first point made by the plaintiff in error is, that there being a regular judgment on the record in his favor, and that not being vacated or set aside, it was irregular to enter another judgment in the same cause. No doubt the better practice would be in all cases where it is practicable, merely to enter the verdict of the jury, and suspend the entry of the judgment until the expiration of the time within which an applica-

tion for a new trial can be made; there would be but few cases in the courts of St. Louis in which this course could not be adopted; but in many counties of the State, the courts not sitting more than two or three days, it could not be done. But this objection falls within the influence of the maxim, *qui dat finem dat media ad finem necessaria.* As the new trial could not have been granted, but by setting aside the former judgment, the granting of the new trial impliedly set aside that judgment. Numerous instances might be produced, in which it has been held that, where a step has been taken in a cause, which could not have been formally done without vacating a previous order, the courts will hold, that such order was impliedly set aside by their subsequent action. Field vs. Holland, 6 Cr. 22; Jones vs. Cox, 7 Mo. Rep. 174.

As to the objection of the defendant in error, that the exception to the exclusion of the records in evidence was not properly saved, we must say that in our opinion the mode adopted for that purpose was hypercritically correct. The bill of exceptions states, that the defendant offered in evidence the four following records of judgments recovered against A. G. Edwards and Lucien D. Cabanne, which were excluded by the court; the records are then set out, and it is subjoined, to which opinion of the court the defendant excepted. As the records were offered in mass, and so excluded, but one exception was necessary to the action of the court. No opinion of this court will warrant a supposition that it indulged in such niceties as this. It has been asserted here, and will be maintained, that a party wishing to avail himself of any error of the court, in any opinion delivered during the progress of a trial, must except to such an opinion when it is given. He will not be permitted to acquiesce in an opinion when it is given, trust to its favorable operation, and afterwards when a trial results against him, be allowed to go back and take an exception. This is a kind of speculation in which no court indulges its suitors. By not excepting to an opinion when first given, as it is his right to do if he believes it erroneous, a party is presumed to acquiesce in its correctness; and even though that opinion may be incorrect, yet *consensus tollit errorem.* It was never supposed, that though an exception is required to be made at the proper time, that it was necessary that the trial should be stayed until a formal bill is drawn up and signed. Such a practice would be extremely inconvenient, and would be productive of much unnecessary delay, as many exceptions are taken during the trial, which are afterwards abandoned, and frequently they are taken by the party who ultimately succeeds. It is sufficient that one

bill is prepared after the trial has terminated, containing all the exceptions which were saved by the party during its progress.

There seems to be no dispute between the parties as to the law governing this case. The doctrine that a voluntary conveyance is not fraudulent per se as to existing creditors, though opposed by some, is sustained by a great weight of authority. The bona fides of every such conveyance, is a question of fact to be ascertained by a jury under all the circumstances attending it. Hinde's lessee vs. Longworth, 11 Wheat.; Howard vs. Williams, 1 Bai. S. C. Rep. 575; Story's Equity. The instruction given by the court contained the law applicable to the case.

The first instruction asked by the defendant was properly refused, because it had been already substantially given. The second instruction was inappropriate to the facts of the case, as the deed to Kingsberry had been regularly acknowledged and recorded.

The third instruction involves a contradiction. To hinder or delay creditors by a voluntary conveyance made for that purpose, is a fraud in law. If such a conveyance was made for such a purpose, it was in the eye of the law made with intent to defraud. Whether there was any depravity in the act, would depend upon the consciousness of the party doing it, and that is a question with which the courts have nothing to do.

An exception arises on the rejection of the deed from Cabanne to Bogy in evidence. This deed made a post nuptial settlement on the wife of Cabanne, and was clearly voluntary, notwithstanding Cabanne may have received a large fortune by his wife. Having then made one provision for his wife, if a subsequent settlement is made, it is clear, that the first provision is a circumstance well calculated to impart light on the motives which prompted the husband in making another. If the first settlement was a reasonable provision for the wife according to the state and condition in life of the husband, some reasons might be required why he was induced to make the second. Why was not all the property settled included in one conveyance? He possessed the property secured by the second deed at the time of the execution of the first. As to the suggestion, that it does not appear what was the value of the property settled on the wife by the first conveyance, it may be answered, that it has been repeatedly decided by this court, that it is error to reject a portion of evidence proper to establish a claim or defence, but not of itself sufficient for that purpose, although no disclosure is made by counsel of an intention to supply the deficiency. It is enough to secure its admission that the evidence offered is a link in the chain of testimony required to support a defence. What weight this rejected deed should have had with

*Lane* vs. *Kingsberry.*

the jury, is not a question for this court; it is sufficient to know that it was a proper matter for their consideration in forming their verdict.

The next exception insisted on in the argument, arises from the rejection of the judgments in evidence. We see no ground on which they could with propriety be excluded. It appears that some of the debts for which the judgments were rendered, were due before the slaves were conveyed, and although they were satisfied, yet it was not until after that time. The circumstance that Cabanne was only liable as endorser, does not affect the question of the admissibility of the evidence. Although the notes on which some of the judgments were founded, bore date subsequently to the settlement, it might have been shown that the debts evidenced by the notes, existed prior to their execution. In determining the question whether a conveyance is fraudulent as to creditors, every matter tending to show the pecuniary condition of the debtor is admissible. The transactions of an individual so frequently running into each other, in order to ascertain his condition, his moneyed transactions about the time of his making a conveyance, sought to be avoided, must be inquired into; nor should they be rejected in evidence although they may have occurred after a fraudulent conveyance, if they serve to throw light upon, or explain his previous conduct. In the investigation of questions of this kind, the courts should lend an unwilling ear to the objection of irrelevancy merely. If the evidence is merely irrelevant, it cannot affect the rights of the objector. The delay in hearing such evidence, is never as great as that caused by arguing the question of its admissibility. It is always best for the courts to err on the safe side. These remarks are only intended to apply to evidence, the sole objection to which is its irrelevancy; when its tendency is to mislead or improperly prejudice the minds of the jury, though irrelevant to the issue, it must of course be excluded.

The fact that a debtor suffered himself to be sued about the time of the execution of a voluntary conveyance, is certainly a circumstance proper to be submitted to a jury charged with the inquiry whether that conveyance was fraudulent as to creditors.

The other Judges concurring, the judgment will be reversed, and the cause remanded.