POTTER *et al.*, Appellants, v. McDOWELL, Respondent.

1. To avoid a deed on the ground that it operates to hinder and delay the creditors of the grantor therein, it is not necessary to show that the act of the grantor therein is corruptly fraudulent; if the deed is voluntary and hinders and delays creditors, it is fraudulent in law, irrespective of the motives of the grantor.

2. A husband can not, to the prejudice of his creditors, settle on his wife, without a valuable consideration, property that may have come to him by means of the marriage.

3. Where the invalidity of the deed, as being fraudulent and void as to creditors, rests upon extrinsic facts, it is a question, under proper instructions, for the jury.

4. A deed of trust made to secure an indebtedness due from the grantor is not rendered void by the fact that time is given within which to execute the trust, provided the time is not unreasonable; what is a reasonable time must depend upon the character of the property and the circumstances of the case.

5. To make a voluntary deed fraudulent and void as to existing creditors, it is not necessary that the assignor should have been insolvent at the time of its execution. If a debtor is in embarrassed circumstances, and makes a voluntary conveyance, and is afterwards unable to meet his debts, owing at the time of the assignment, in the ordinary course prescribed by law for their collection, or is reduced to such a condition that an execution against him would be unavailing, such conveyance is void as to those debts, and the property conveyed is subject to their payment.

6. Declarations made by a grantor at the time of the execution of a deed of assignment are admissible in evidence as a part of the *res gestæ*, on an issue raised as to the validity of the deed on the ground of its hindering and delaying creditors.

*Appeal from St. Louis Circuit Court.*

This was a suit by attachment brought by John C. Potter and others against John McDowell. The petition was filed April 7, 1858. The attachment was on the ground that the defendant had " fraudulently conveyed or assigned his property or effects so as to hinder and delay his creditors." Certain lots, seven in number, on St. Ange avenue, in St. Louis, an undivided fifth part of a farm known as the Stevens farm, and other real estate, besides personal property, shares of stock, &c., were attached. A. J. L. Stevens was summoned as garnishee.

By deed dated October 14, 1857, McDowell and wife conveyed seven lots on St. Ange avenue, St. Louis, to said A. J. L. Stevens in trust for the sole and separate use of Mrs. McDowell. The consideration mentioned is five thousand dollars. By two other deeds of the same date said McDowell and wife conveyed an undivided interest of one-fifth in certain lands, including a farm known as Stevens' farm ; also certain negroes, to said A. J. L. Stevens in trust for the sole and separate use of Mrs. McDowell. The St. Ange lots were owned by Mr. McDowell. The one-fifth interest in the other real estate came to said Mrs. McDowell as one of five heirs of ———— Stevens, deceased. The negroes came to McDowell in right of his wife. On February 25, 1858, McDowell and wife conveyed household furniture to secure a note to A. J. L. Stevens for $4,606.43, payable one day after date, dated February 19, 1858. On March 31, 1858, McDowell and wife conveyed to Stevens, in consideration of $8,900, the slaves and one-fifth of Stevens' farm previously conveyed ; also the St. Ange property for an expressed consideration of $25,000. Five notes for five thousand dollars each were given by Stevens for the St. Ange property, and a deed of trust given by him to secure them. Stevens, sworn on behalf of plaintiff as a witness, was asked, on cross-examination, the following question: "Did you purchase your interest in the farm and house in good faith?" The defendant answered, against the objection of the plaintiff: "Yes, I purchased them in good faith; it was on my part, and, I think, on McDowell's also." Much testimony was adduced to show the embarrassed circumstances of McDowell in October, 1857, and subsequently, and the circumstances attending the execution of the deeds set forth above, and the considerations therefor.

The court, on the motion of the plaintiffs, gave the following instructions: " 1. A married man who owns or has an interest in property by virtue of his marriage, when in embarrassed circumstances, can no more convey such property or interest, as against his existing creditors, for the benefit

of his wife, than he could convey property owned by himself which he may have acquired otherwise. 2. All voluntary conveyances made by a man in insolvent or greatly embarrassed circumstances are void as to existing creditors. 3. If prior to the institution of this suit the defendant conveyed any property or any interest he had in any property, for the purpose of protecting or securing such property or interest from the claims of his creditors, then the jury will find for the plaintiffs. 4. A conveyance of property may be absolutely void as to the creditors of the person executing such conveyance, although the person to whom the conveyance is made pays more than the value of the property so conveyed, and is absolutely void as to such creditors if such conveyance was executed for the purpose of hindering or delaying creditors, and the purchaser knows of such intention when the purchase is made. 5. If the jury find from the evidence that, before the institution of this suit, John McDowell, the defendant, executed either of the deeds read in evidence for the purpose of hindering or delaying his creditors ; or that said McDowell conveyed or transferred any of his property, or negotiable paper, or debts due him, for the purpose of hindering or delaying his creditors, or for the purpose of compelling his creditors to give him a longer time for the payment of their debts than they were inclined to do ; or if the jury find from the evidence that any of McDowell's property, at the institution of this suit, had been conveyed for the purpose of deceiving said McDowell's creditors as to the true situation of said McDowell's property or his pecuniary condition so far as to hinder or delay the collection of their debts, then, in either case, the jury will find for the plaintiffs. 6. If the jury find from the evidence that either of the deeds read in evidence from the defendant to his wife's trustee was executed, without any valuable consideration therefor, for the purpose of enabling the wife of said defendant to have the use, enjoyment or profit arising from said property beyond the control of the then existing creditors of said defendant, they will find for plaintiffs. 7. If the jury find

Potter v. McDowell.

from the evidence that on the 14th day of October, 1857, defendant was insolvent, and when insolvent executed any of the deeds read in evidence to his wife's trustee, without any valuable consideration therefor, then said conveyance is fraudulent and void as to the creditors of said defendant, and the jury will find for the plaintiffs. 8. If the jury find from the evidence that the defendant, in October, 1857, or at any other time between that date and the institution of this suit, had conveyed any portion of his property for the purpose of keeping it from his creditors, even if the jury shall find that the property was conveyed to secure a *bona fide* debt, they will find for the plaintiffs. 9. If the jury find from the evidence that either of the deeds from defendant to A. J. L. Stevens was made to secure a debt honestly due said Stevens, but that said McDowell's motive in making said conveyance was to keep said property from his other creditors, or that said McDowell made such conveyance for the purpose, in part, of obtaining the use of said property, or any portion of the same, beyond the reach of his creditors, they will find for the plaintiffs."

The court, of its own motion, gave the following instructions : " 1. The only issue submitted to this jury, and which they are to try, is whether the ground contained in the affidavit, upon the writ of attachment issued in the case, is true or not. 2. The writ of attachment in this case was sued out upon the ground that the defendant had, previously to the institution of this suit, fraudulently conveyed or assigned his property so as to hinder and delay his creditors. If you find that the above mentioned ground of attachment is true, you will find the issue for the plaintiffs. If you find that it is untrue, you will find the issue for the defendant. 3. The mere belief of the affiant, who made the affidavit in this case, is not in question ; but the proposition for the jury to try is whether, prior to the institution of this suit, the defendant had, in fact, fraudulently conveyed or assigned his property or effects so as to hinder or delay his creditors. To entitle the plaintiffs to a verdict in their favor, it is incumbent upon

them to prove the truth of the above proposition to the satisfaction of the jury; and unless the jury find the above proposition to be true, they will find a verdict for the defendant."

The court, at the instance of the defendant, instructed as follows: " 1. Before the jury can find for the plaintiffs in this case, they must believe from the evidence in the case that the defendant, John McDowell, conveyed or assigned his property or effects with a fraudulent intent, and it devolves upon the plaintiffs to prove this to the satisfaction of the jury. 2. If the defendant executed the deed to Andrew J. L. Stevens, dated March 31, 1858, then the defendant was legally bound to pay the taxes on the premises therein mentioned for the year 1858. 3. A debtor may lawfully pay a just debt to any one of his creditors in preference to others; and any payment made in good faith by a debtor to one creditor in preference to others, whether made in goods, money, property, or other effects, is not in law a fraudulent disposition of his property. 4. If the jury believe from the evidence that the sales of the land to Andrew J. L. Stevens, described in the deeds read in evidence, were made in good faith, and that the defendant John McDowell used the notes arising therefrom in good faith to pay or secure the payment of this indebtedness, or any part thereof, then said sales were valid, and these circumstances furnish of themselves no evidence whatever of a fraudulent intent on the part of said defendant, and so the jury ought to find. 5. Though the jury should believe from the evidence that the consideration for which the defendant sold and conveyed his interest in the property described in this deed from said defendant to Andrew J. L. Stevens, given in evidence by the plaintiff, was less than the actual value of that interest, yet said sale and conveyance was valid in law, and does not authorize the jury, on that account, to find for the plaintiffs, unless they believe from the evidence that the same was made by said defendant with a fraudulent intent to hinder or delay his creditors. 6. If the jury believe from the evidence that at the time of the execution of the deeds by defendant to Andrew J. L. Stevens

Potter v. McDowell.

for the benefit of his wife Judith McDowell, in October, 1857, read in evidence by plaintiffs, the defendant was insolvent and unable to pay all his debts, then the execution of said deeds is not fraudulent unless made with the intent to hinder or delay the creditors of said defendant."

Certain instructions asked by the plaintiffs with respect to insolvency were refused.

The jury rendered a verdict for defendant.

*Knox & Kellogg*, for appellants.

1. It is the province of the court to define insolvency. The court erred in refusing to give the instructions asked. (4 Hill, 650; 1 M. & S. 338; 3 Dow. & Ry. 218.) The evidence shows clearly that McDowell was insolvent in October, 1857. The conveyances made in October, 1857, were absolutely void as to plaintiffs. They were creditors before said deeds were executed. To make conveyances valid as to existing creditors, they must not only be *bona fide*, but for a valuable consideration. As to subsequent creditors, they may be valid if *bona fide*. (8 Wheat. 229; 4 Wash. C. C. 678; 1 Brock. 500; 2 id. 132; 1 Pet. C. C. 460; 3 Maryl. Ch. D. 167, 349; 25 Miss. 146; 1 Jones, 67; 2 Ohio, 373; 6 Maryl. 172; 26 Ala. 443; 3 Jones, 85; 20 How. 45; 4 Ind. 56; 39 Engl. L. & Eq. 85; 7 Blackf. 510; 9 S. & M. 394; 1 Smith, 252; 26 Maine, 295; 3 Johns. Ch. 481; 2 Maryl. Ch. D. 220; 14 Ala. 350; 18 Ala. 585; 20 Ala. 732; 1 Carter, 378, 350, 459, 473; 8 N. R. 44; 2 Dougl. 176; 3 Dev. 82; 4 id. 197; 3 Gratt. 26; 9 Ala. 937; 15 Mo. 417; 17 Johns. 261; 8 Cow. 429; 18 Wend. 375; 1 Cranch, 309.) Voluntary conveyances are void as to existing creditors. The instructions were erroneous requiring an *intent* to hinder and delay. It is only where the act complained of is a future act that the affidavit must state an *intent*. If the act is past, it is not the intent. If the act be fraudulent in law and have the effect to hinder and delay creditors, then the attachment will be sustained. (28 Mo. 173.) The instructions given are inconsistent and conflicting. The deeds of October are

void by reason of the fictitious considerations inserted therein. The deeds dated March 31, 1858, were fraudulent as to the creditors in consequence of the length of time given to the purchaser. (5 Barr, 78; 4 Cush. 441; 24 Miss. 106; 11 S. & M. 77.) The court erred in admitting the testimony of Mr. Biddlecome as to what McDowell told him when the deeds were drawn; also in permitting defendant to ask Stevens the question, "Did you purchase your sister's interest in the farm and the houses in good faith?" The deed of February 25, 1858, was void for the reason that it conveyed horses, mules, grain, hay, with provision that the trustee should not sell for two years. Consumable articles were thus conveyed to be used by the vendor. Cattle and all were placed beyond the reach of McDowell's creditors. (3 Metc. 117; 5 Humph. 496; 3 Humph. 547.) The deeds of March 31, 1858, were void by reason of the extraordinary time given to the purchaser. No money was paid and, the terms of payment were unusual. The selling of property on a credit of five years, by one unable to pay his debts, must hinder and delay creditors. The terms of sale were unusual. (5 Barr, 478; 24 Miss. 106; 4 Cush. 441; 11 S. & M. 70.) The sale to Stevens could not have been *bona fide*. When Stevens was summoned as a garnishee in this case, McDowell held all the notes for the St. Ange property.

*Lackland, Cline & Jamison*, for respondent.

I. The questions asked of Stevens were proper and legal. (15 Mo. 383; 14 Mo. 163; 15 Mo. 416; 27 Mo. 585.) The question asked Mr. Biddlecome was proper and legal. The instructions given fully presented the whole law of the case to the jury. (14 Mo. 163, 597; 21 Mo. 296; 15 Mo. 598.) The fraudulent intent of McDowell in executing the deed was properly left to the jury. (Id.; 19 Mo. 17, 634; 3 Mo. 206; 11 Mo. 369, 402, 540; 15 Mo. 415–6; 7 B. Mon. 265; 1 Conn. 558; 1 Bail. 575.) The instructions asked by the plaintiffs were properly refused. The deeds of October, 1857, are the only ones pretended to be voluntary. The same

property was conveyed *bona fide* before the institution of this suit. Under the proof it was immaterial whether McDowell was solvent or not. The instructions refused were abstractions. (11 Mo. 388; 14 Mo. 163; 13 Mo. 596.)

Scott, Judge, delivered the opinion of the court.

The result of this trial is a little surprising, when we read the instructions given for the plaintiffs; but that surprise is somewhat diminished on looking at those given for the defendant. The issue on the case was, whether the defendant, McDowell, had fraudulently conveyed and assigned his property and effects so as to hinder and delay his creditors. It is evident, from the tenor of the instructions asked by the defendant, that he sought an advantage by having the jury told by the court that they must find that there was an actual fraudulent intent on his part to hinder and delay his creditors in order to find a verdict for the plaintiffs. This is not the precise language of the instructions, but, taking them all together, they must have produced this impression on the minds of the jury, or otherwise we can not account for the verdict. When a voluntary deed is made by a debtor in embarrassed circumstances, and a question arises as to its validity, in order to render the deed fraudulent in law as to existing creditors it is not necessary to show that the debtor contemplated a fraud in making it, or that it was an immoral or corrupt act. These are matters with which the jury has nothing to do. The law does not concern itself about the private or secret motives which may influence the debtor. It does not deal with his conscience. He may make the deed with the most upright intentions, really believing that he has a right to do so, and that it was his right and duty to do it; and yet, if that deed is voluntary and hinders and delays his creditors, it is fraudulent. The law presumes that every man intends the necessary consequences of his acts; and if the act does hinder and delay his creditors, then the law presumes it was made with a fraudulent intent, however pure in reality the motives of the debtor may have been.

The instructions given by the court may have been warranted by the case of Gates v. Labeaume, 19 Mo. 29; but they do not harmonize with the law as declared in the case of Lane v. Kingsbury, 11 Mo. 402, decided before, nor that of Reed v. Pelletier, 28 Mo. 177, decided since that case. In cases where the question of fraud is one proper to be submitted to the jury, they must be influenced by the same policy in applying the law to the facts found by them as would influence the courts, otherwise there would be no uniformity nor stability in the law.

There seems not to have been much doubt but that the deeds of the 14th of October, 1857, conveying the St. Ange lots, the slaves and the life interest of Mrs. McDowell in her father's real estate, were without consideration and voluntary. The St. Ange property was McDowell's; the slaves he acquired through his wife; but any property he may have obtained by means of his marriage he could not afterwards, to the prejudice of his creditors, settle on his wife without a valuable consideration. Although there is a valuable consideration recited in these deeds, the trustee Stevens testifies he was not aware of their existence in March, 1858. Indeed the subsequent conduct of the parties in relation to the St. Ange property and the slaves in March, 1858, shows in what light the deeds of October 14, 1857, conveying that property in trust for Mrs. McDowell were viewed.

But although the deeds of October, 1857, were voluntary, yet it is maintained that the subsequent conveyance of the property covered by two of those deeds by J. McDowell and wife to A. J. L. Stevens, for a valuable consideration, before the issuing of the writ of attachment took away any ground for an attachment that might have existed prior to the execution of those conveyances; that, at the date of the affidavit in April following, it could not be affirmed that the defendant had fraudulently conveyed his property to hinder and delay his creditors by reason of conveyances to the wife in October, 1857, when the property in those conveyances described had been subsequently and before the attachment in good faith

disposed of for the benefit of creditors. The deeds of October, 1857, however they may have been regarded as to creditors, were binding between the parties. The title passed to the trustee to the use of Mrs. McDowell. Now if Mrs. McDowell afterwards conveyed this property for the payment of her husband's debts, does it therefore follow that the conveyances made by him to her were not fraudulent?

But the deed of March 31, 1858, by which Mrs. McDowell attempted to convey away the real estate granted in trust to her by the deed of October 14, 1857, was not executed in a manner to be effectual according to the terms of the trust deed to Stevens for her use. If she could dispose of the entire estate, could she defeat the interest of her heirs otherwise than by complying with the terms of the trust deed? Or, the deed of March 31, 1858, having been acknowledged before a justice of the peace, with the wife's relinquishment of the right of dower, are we to come to the conclusion that the parties regarded the deed of October, 1857, as voluntary and void, and consequently the husband had a right to sell the property as his own? Could he do this—as between himself and wife the deed was valid?

A question was made whether the deed of March, 1858, executed by McDowell and wife to Stevens, conveying the St. Ange property, was fraudulent and void. That, we conceive, was a question for the jury, as the invalidity of the deed depended upon extrinsic facts. That deed may be viewed in two lights. If we look upon it as an original act conceived and carried into effect on the day of its date, without any connection with the previous dealings with the property described in it, our mistrust as to its good faith might well be excited. When men's designs are correct, they are usually content to carry them into effect in the usual mode. It is very unusual for men, who are in embarrassed circumstances, to sell property on a long credit and use the notes not in the actual payment of their debts, but to place them as collateral security in the hands of preferred creditors. Nearly all, if not all, the bonds for the St. Ange property

were disposed of in this manner. If the consideration received for such sale would not avail actually to discharge the debts, why make it? Why dispose of the land and take bonds on long time, and thereby withdraw the land from the reach of his creditors, and substitute, in its stead, postponed bonds which would be subject to his own absolute disposal? But if we consider this deed in connection with the deed of October, 1857, the manner in which that deed was disregarded and attempted to be set aside, and all the circumstances attending this transaction, a jury would be well warranted in coming to the conclusion that the deed of March, 1858, was made to hinder and delay the creditors of McDowell.

As to the deed of February 25, 1858, there is not enough in the record to enable us to pronounce an opinion upon it. The giving a time within which to execute a trust is not fraudulent provided the time is not unreasonable. What is a reasonable time must depend upon the character of the property and the circumstances of the case. Under this rule, in case of an assignment to pay a particular debt or debts, it would not be allowable, under pretence of securing such debts, to hold property more than is sufficient to satisfy them to the prejudice of other creditors. A deed conveying, in trust for the payment of a debt, articles consumable in the use, may be fraudulent, the grantor remaining in possession of them; unless they are not to be used, and may be kept without damage until the trust debt shall become payable. In analogy to other decisions made of late years on the statute of Elizabeth concerning fraudulent conveyances, a deed embracing such articles would be void as to them without affecting its validity as to other property of a different character conveyed by it.

As to the question whether the deeds of October, 1857, being voluntary, were fraudulent as to existing creditors, we do not consider that in order to make them so, that the defendant should have been insolvent at the time of making them. If a debtor is in embarrassed circumstances, and

makes a voluntary conveyance, and is afterwards unable to meet his debts owing at the time of the assignment in the ordinary course prescribed by law for their collection, or is reduced to that situation that an execution against him would be unavailing, such conveyance is void as to those debts, and the property conveyed is subject to their payment. We do not deem it necessary to define insolvency. We all know what actual insolvency is, but we may differ as to what is the evidence of insolvency. We do not adopt the meaning of the word given it by the English courts in construing the bankrupt laws. There it is said that a man is in insolvent circumstances " when he is not in a condition to pay his debts in the ordinary course, as persons carrying on trade usually do." (Showe v. Lucas, 3 Dow. & Ry. 218.) Judge Cowen said that if all a man's debts can not be collected by legal process out of his own means, he is insolvent. (Herrick v. Borst, 4 Hill, 652.) This comes more nearly to our idea of insolvency. Under our statute concerning the assignment of bonds, the return of *nulla bona* to a *fi. fa.* was always regarded as sufficient evidence of the insolvency of the maker, so as to give the assignee a recourse against the assignor. We do not mean to say that this is the only legal mode of proving that a man is insolvent. Whenever it is shown that a suit against an individual for a demand would be unavailing, he is insolvent. But we have said that we did [not] deem it necessary to define insolvency, as it was not necessary to show that one is insolvent, at the time of making a voluntary conveyance, in order to render it void as to existing creditors.

We do not see any legal objection to the question put to Stevens by the defendant: " If he purchased his sister's interest in the farm and house in good faith." Stevens was introduced by the plaintiff, and was a competent witness. Interest by our law did not disqualify him. No doubt the party asking the question expected a favorable answer, and he received it. But jurors, we imagine, understand such matters, and would not suppose that a man would do an act

and afterwards say that it was prompted by corrupt motives. No doubt Stevens believed what he said. But it would be strange, if one man's right depended upon another's moral sense. The moral sense is much stronger in some men than in others. Whatever a man's opinion of his own acts may be, yet there are certain rules founded in experience and established by law for determining the validity of deeds under the statute concerning fraudulent conveyances; and if those rules are transgressed in making a deed, courts and juries will pronounce it void without regard to the opinions of the parties to it. Indeed we think that evidence of such a character would have so little weight with a jury, that it would scarcely be worth the trouble to make a point about it.

A witness was asked, " what was said by McDowell when he (the witness) made (wrote) the deeds?" This was objected to by the plaintiffs ; the objection was overruled, and an exception was taken. Ordinarily the declarations accompanying an act are admissible as explanatory of the character and motives of the act. They in this way become a part of the *res gestæ.* As the plaintiff gave the deed in evidence, they could not object that the defendant was making his own declarations evidence for himself. If the deed was evidence for the plaintiffs, the defendant had a right to the declarations of the grantor showing the motives to the act. If the declarations, however, are a part of the *res gestæ,* either party, that would have a right to introduce the deed, would be entitled to give them in evidence as a part of the transaction. (Cowen & Edwards' Notes, p. 188.) The jury will determine the weight of such declarations, by ascertaining whether they were sincere, or were made to withdraw attention from the real nature of the act, or to hide the real purpose of it.

The instructions given for the plaintiffs were not excepted to, and therefore will not be reviewed. A purchaser may buy property from a debtor and pay its value for it; yet, if the purchase is made with a fraudulent intent to defeat a

creditor's execution, the sale will be void. But a debtor may prefer one creditor to another, and may lawfully assign property sufficient to satisfy the preferred debt. But, under pretence of paying a debt, he is not permitted to assign more property than is reasonably sufficient for that purpose, to the prejudice of other creditors. It is no objection to an assignment made to pay a *bona fide* debt that the intent of the parties was to postpone or hinder other creditors. Such is the necessary effect of such an assignment; and to hold that such an intent would defeat it, would be to take away the right to give a preference. (Kuykendall v. Perry & Co. 15 Mo. 420.)

All the instructions given for the defendant in relation to his intent in making the conveyances should have been accompanied with the explanation set forth in this opinion.

Reversed and remanded. The other judges concur.