OF THE

# STATE OF MISSOURI

AT THE

## OCTOBER TERM, 1897.

*( Continued from Volume 141.)*

LORING, *Appellant*, v. GROOMER.

Division Two, December 7, 1897.

1. **Evidence:** VOID TAX DEED. A tax deed, almost a literal copy of the one held void in *Burden v. Taylor*, 124 Mo. 12, is in this cause held void for the reasons given in that case.

2. **Title:** COLLECTOR'S TAX DEED. A tax collector can not as such pass the title of land from one man to another, without at least substantially complying with the statutes from which alone he derives authority to sell and convey lands for delinquent taxes.

3. **Evidence:** DEED FROM PURCHASER AT VOID TAX SALE. Where a collector's deed is void, a deed from the purchaser who claims through such void tax deed is also void, and can not be admitted in evidence for the purpose of establishing title.

4. **Warranty Deed:** COVENANTS: HOMESTEAD. A warranty deed contains covenants of general warranty which run with the land. Where one by *mesne* conveyances succeeds to the rights of the covenantee in the original warranty deed, he becomes in legal contemplation a creditor of such covenantor from the time of the breach of the original covenant, which may not be until there have been several *mesne* conveyances, and no cause of action accrues in favor of such succeeding covenantee until such breach.

VOL. 142 mo—1 (1)

5. Homestead: FILING DEED IN RECORDER'S OFFICE. Under the homestead law of 1865, requiring "the deed of such homestead" to be filed "in the proper office for the records of deeds," the homestead is not exempt from levy, attachment and sale 'until the filing of the deed of homestead in the recorder's office. The filing in the circuit clerk's office of the commissioners' deed in partition, setting off certain land to one who afterward claimed it as a homestead, did not exempt such land from sale.

6. Land Acquired by Inheritance. Prior to the amendment to the homestead law of 1887, homesteads acquired by descent and devise were not exempt from attachment and levy under execution, as were homesteads acquired by deed.

*Appeal from De Kalb Circuit Court.*

AFFIRMED.

· *S. G. Loring* for appellant.

(1) The court erred in admitting in evidence the pretended collector's deed from Ransom as collector to James Ewart, and the quitclaim deed from Ewart to Chris Groomer. The said collector's deed was a mere skeleton deed, and fails to recite and show the things essential to make it a valid conveyance, and was void upon its face and incompetent and irrelevant under the issues in this case. *Burden v. Taylor*, 124 Mo. 13. (2) As a homestead is a statutory right, the statutes state the circumstances under which it shall exist, and if a very liberal construction of its terms will not embrace the claimant's demand, it can not be admitted. R. S. 1889, sec. 5441; *Casebolt v. Donaldson*, 67 Mo. 310. (3) Prior to 1887 and subsequent to 1865, the only way by which a homestead could be acquired was by deed. *State v. Diveling*, 66 Mo. 375; *Shindler v. Givens*, 63 Mo. 396; *Asher v. Payne*, 81 Mo. 518; *Tennett v. Pruett*, 94 Mo. 149; *Pike v. Morgan*, 44 Mo. 491; 23 Am. and Eng. Ency. of Law, p. 344. (4) The

deed of August 14, 1877, if it had been delivered to this defendant, would have only conveyed to her the equitable title to the forty acres in section 11 and an undivided four sixths' interest in the lands in section 14, township 60, range 30. *Morrison v. Thestle*, 67 Mo. 60; *Tennison v. Tennison*, 46 Mo. 81; *Wilcox v. Todd*, 64 Mo. 388; *Crawford v. Whitman*, 120 Mo. 149. (5) It was void at law—Groomer could not contract with his wife. *Turner v. Shaw*, 96 Mo. 22; *Crawford v. Whitman*, 120 Mo. 149.

*Hewitt & Blair* for respondent.

(1) Defendant set out by her answer that the lands in question were acquired by her husband prior to August, 1877, and that he was in occupancy thereof, claiming the same as his homestead. The learned chancellor evidently found these to be the facts, and correctly, as we think, from all the evidence. This case comes clearly within the spirit and letter of the homestead law, section 5441, Revised Statutes 1889, the same being the law of 1865. *State ex rel. v. Diveling*, 66 Mo. 379. (2) Respondent's husband, Christopher L., was invested with title to the west half of the south east quarter of section 11, township 60, range 30, by commissioners' deed and decree of court, March, 1872. Thompson on Homesteads, secs. 165, 166; *Deere v. Chapman*, 25 Ill. 612; *Conklin v. Foster*, 57 Ill. 107; *Bartholomew v. West*, 2 Dill. 293; *Spencer v. Geissman*, 37 Cal. 99; *Brooks v. Hyde*, 37 Cal. 373; *Vogler v. Montgomery*, 54 Mo. 584. (3) A homestead could be acquired in ways other than by deed, prior to the amendment of 1887. *Blandy v. Asher*, 72 Mo. 28; Thompson on Homesteads, par. 4, 7; G. S. 1865, ch. 3, p. 449, sec. 1. (4) The law as announced in the cases cited in appellant's brief, con-

cerning fraudulent conveyances, has no application to property which is exempted from seizure and sale under attachment and execution, such as homesteads. Creditors have no interest in such property, as it can not be subjected to the payments of debts by proceedings in equity any more than it can be seized under attachment or execution. *Burns v. Bangert*, 92 Mo. 167; *Davis v. Land*, 88 Mo. 436; *Nichols, Shepherd Co. v. Burch*, 27 N. E. Rep. 737; *Bank v. Koepen*, 47 N. W. Rep. 723; *Bank v. Guthrie*, 127 Mo. 193. (5) The burden of proof is on the creditor to show that the debt was contracted prior to the acquisition of the homestead and not upon the party claiming the homestead to show the contrary. *Anthony v. Rice*, 110 Mo. 223 (overruling *Murphy v. DeFrance*, 105 Mo. 54). (6) No third party can question the validity of a conveyance from the husband to the wife unless he was a creditor of the husband before the conveyance was made, or was a subsequent purchaser without notice. *DeGarca v. Galvan*, 55 Tex. 53; *Hart v. Leete*, 104 Mo. 315, 336; Thompson on Homestead, secs. 165, 226; *Tomlin v. Hilgard*, 43 Ill. 300; *King v. Welborn*, 47 N. W. Rep. (Mich.) 106; *Fordyce v. Hicks*, 45 N. W. Rep. (Iowa) 750; *Oswald v. McCauley*, 42 N. W. Rep. (Dak.) 769.

BURGESS, J.—This is a suit in equity by plaintiff, who claims to have acquired all of the title of one Christopher L. Groomer to the lands in litigation by virtue of a sheriff's deed, to set aside as fraudulent and void two deeds to different parts of said lands executed by said Christopher to the defendant who was then, and is now, his wife, and to be placed in possession of said lands.

Defendant in her answer denied generally the allegations in the petition, and then averred that the said Christopher L. Groomer had acquired the title to the

lands at the time of the execution of the deeds by him to her, and was in the occupancy thereof, together with his wife, this defendant, claiming the same as a homestead, and that said lands do not exceed one hundred and sixty acres in area, nor the value of $1,500.

The trial resulted in a judgment for defendant and a decree in her favor setting aside the sheriff's deed to plaintiff. In due time thereafter plaintiff filed his motion for a new trial, which being overruled, he appeals.

The facts are as follows:

Some time prior to the year 1871, William J. Groomer died intestate at the county of DeKalb, in the State of Missouri, leaving surviving him his widow, Sarah, and the following children, viz., William R., David A., Logan P., Richard R., Christopher L., and America J., as his only heirs at law. America J. thereafter intermarried with William W. Bratcher. At the time of his death William J. Groomer was the owner in fee of a tract of land in said county containing about seven hundred acres, which included the northwest quarter of the northeast quarter of section 14, township 60, range 30. On September 10, 1871, David Groomer, Sr., conveyed by deed to the heirs of said William J. Groomer a tract of land in said county of which the west half of the southeast quarter of section 11, township 60, range 30, in said county, was part. This deed was duly recorded in the recorder's office of said county in September, 1871. In 1872, William R. Groomer and David A. Groomer began suit in the circuit court of said county against Sarah Groomer, the widow, and Logan P., Richard R., America J., and Christopher L. for partition of the lands which they inherited from their father, Wm. J. Groomer, and the lands conveyed to them by David Groomer, Sr., viz., the northwest quarter of the northeast quarter of section 14, township 60, range 30, and

the west half of the southeast quarter of section 11, township 60, range 30, the lands in question; the forty acre tract in section 14 having been acquired by inheritance, and the eighty acre tract in section 11 by deed from David Groomer, Sr. By the report of the commissioners in the partition suit filed at the March term, 1872, of the DeKalb county circuit court, the west half of the southeast quarter of section 11, township 60, range 30, was partitioned and allotted to Christopher L. Groomer, and other lands to the other parties according to their respective interests. At the same term of said court it was adjudged and decreed by the court that the title to the lands described in the said report "be, and the same is, hereby vested in the parties to whom said lands are partitioned and allotted." It does not appear, however, from the record that any part of the northeast quarter of section 14, township 60, range 30 (part of the land inherited from the father, Wm. J. Groomer), was partitioned or allotted by the commissioners, although petitioned for.

On the thirtieth day of September, 1875, Christopher L. Groomer acquired by *mesne* conveyances the title to three sixths of the said northwest quarter of the northeast quarter of section 14, township 60, range 30, the same being the one sixth interest of each of the following named heirs of Wm. J. Groomer, deceased, viz., Wm. R. Groomer, America J. Bratcher (formerly Groomer) and husband, and David A. Groomer; which, together with the one sixth he inherited, vested in him absolutely four sixths interest in the said forty acres. On January 2, 1871, one James Ewart purchased the said northwest quarter of the northeast quarter of section 14 at a collector's sale for the delinquent taxes for the year 1867, and received a deed from the said collector, which said deed was duly recorded on January 2, 1871, in the recorder's office of the said

DeKalb county.  On April 6, 1871, the said Ewart conveyed to the said Christopher L. Groomer, in consideration of $60, the said northwest quarter of the northeast quarter by deed of quitclaim in the usual form, which said deed was duly acknowledged and recorded April 6, 1871, in the recorder's office of DeKalb county.  Christopher L. Groomer, the husband of the defendant, entered upon the lands in question—the eighty acres in section 11, and the twenty-five acres in section 14—March 8, 1877; erected a small dwelling on the twenty-five acre tract, and fenced it, and cleared up a part of the eighty in section 11, and fenced portions of it from time to time, as he grew able to do so. On May 27, 1877, Christopher L. Groomer married the defendant, went to housekeeping on the land, and they have occupied the same ever since, claiming the same as their homestead.

On the fourteenth day of August, 1877, Christopher L. Groomer duly executed a general warranty deed, containing the usual covenants, in consideration of $1 to him paid by Lina Groomer (his wife), whereby he conveyed to her the west half of the southeast quarter of section 11, township 60, range 30.  And afterward, to wit, on the nineteenth day of October, 1892, he also conveyed to her by deed the twenty-five acre tract in section 14. On the tenth day of April, 1880, Logan P. Groomer and Sarah, his wife, by their deed of quitclaim, duly signed, sealed, acknowledged, and delivered, in consideration of the sum of $1 to them paid by Christopher L. Groomer, remised, released, and quitclaimed to the said Christopher L. Groomer the north twenty-five acres of the northwest quarter of the northeast quarter of section 14, township 60, range 30, which said deed was duly recorded in the office of the recorder of deeds of DeKalb county, Missouri.

Christopher L. Groomer and wife conveyed by

general warranty deed dated March, 1878, the south half of the northeast quarter of section 14, township 60, range 30, to one Simon Jones, who afterward conveyed the same to one Sampson F. Jones, and Sampson F. Jones conveyed the same to one Henry Wilson, in trust to secure one Wilder for $800. On the twentieth day of September, 1888, the plaintiff (Loring) purchased the same land at a foreclosure sale under said trust deed.

At a regular term of the circuit court of DeKalb county, Missouri, in the year 1884, upon the motion of Logan P. Groomer, the said court made an entry *nunc pro tunc* amending the judgment entered in the partition proceedings of the lands of Wm. J. Groomer, deceased (made at March term, 1872, of said court) whereby the title to the said south half of the northeast quarter of section 14, township 60, range 30, was vested in the said Logan P. Groomer.

At the February term, 1894, of said circuit court, plaintiff obtained judgment against Christopher L. and Sarah Groomer, his mother, for breach of the covenant of warranty contained in the deed from them to Simon Jones, March 6, 1878; and thereafter, at the October term, 1894, of said court, at an execution sale under said judgment; purchased the lands in question which had been levied upon and seized as the lands of said Christopher L. Groomer.

The first point insisted upon for a reversal of the judgment from which this appeal was taken is with respect of the action of the trial court in admitting in evidence the collector's deed from Ranson as collector to James Ewart, and the quitclaim deed from Ewart to Christopher L. Groomer. The tax deed in question is almost a literal copy of the tax deed which was held to be void upon its face in *Burden v. Taylor*, 124 Mo. 12, and for the same reasons given in that case was void, and therefore improperly admitted in evidence. A tax.

collector can not as such pass the title of land from one man to another, without at least substantially complying with the statutes from which alone he derives authority to sell and convey lands for delinquent taxes. The deed is a mere skeleton, and is so glaringly void that it is unnecessary to pass *sereatim* upon its many fatal defects.

It follows that the quitclaim deed from Ewart to Christopher L. Groomer was also improperly admitted in evidence, because Ewart had no interest in the land other than that which he acquired by the collector's deed, and as he acquired no title by that deed, none was passed by the quitclaim deed from him to Groomer.

The deed executed by Christopher L. Groomer on the sixth day of March, 1878, to Simon Jones, for the south half of the northeast quarter of section 14, township 60, of range 30, contained covenants of general warranty which run with the land (Rawle on Covenants for Title [5 Ed.], sec. 204) and plaintiff having by *mesne* conveyances succeeded to the rights of the covenantee became in legal contemplation a creditor of said Groomer from the time of the breach of the covenant of warranty in the deed to Jones, which was not broken according to the allegations in plaintiff's petition until the first day of August, 1888, when Logan Groomer entered upon the land, and has ever since been occupying the same adversely to plaintiff. Rawle on Covenants for Title [5 Ed.], sec. 131. No cause of action existed in favor of plaintiff before that time. Then when plaintiff as assignee of the covenant in that deed recovered judgment thereon against the grantor, Christopher L., for breach thereof, had the land in question sold, became the purchaser thereof, and received the sheriff's deed therefor, he became invested with all the interest of said Groomer in said

land, if any he had, which was subject to sale under execution.

Christopher L., his sister and brothers, acquired the land in section 14 by inheritance, and that in section 11 by deed, and was therefore tenant in common with them, and while it was thus held by them, Christopher was not a housekeeper, or the head of a family, and had no homestead rights in it. But it is insisted that when Christopher's interest was set off to him in the suit in partition between himself, sister and brothers, in March, 1872, and he and his wife, the defendant, moved onto it and thereafter claimed it as his homestead, that under the homestead law of 1865 (G. S. 1865, chap. 111) entitled of "Estates of Homesteads" which was then in force, it was from the time of its occupancy by them as such homestead exempt from levy under attachment and execution, and that no title passed to plaintiff by virtue of his sheriff's deed.

By section 1 of that chapter it is provided that "The homestead of every housekeeper or head of a family, consisting of a dwelling house and appurtenances, and the land used in connection therewith, not exceeding the amount and value herein limited, which is or shall be used by such housekeeper or head of a family as such homestead, shall, together with the rents, issues, and products thereof, be exempt from attachment and execution, except as herein provided. Such homestead, in the country, shall not include more than one hundred and sixty acres of land, or exceed the total value of fifteen hundred dollars, and in cities having a population of forty thousand or more, such homestead shall not include more than eighteen square rods of ground, or exceed the total value of three thousand dollars."

By section 7 of said act it is provided that: "Such homestead shall be subject to attachment and levy of

execution upon all causes of *action existing at the* time of the acquiring such homestead, except as herein otherwise provided; and, for this purpose, such time shall be the date of the filing in the proper office for the records of deeds, the deed of such homestead, and (in case of existing estates) such homestead shall not be subject to attachment or levy of execution upon any liability hereafter created."

In order to hold in accordance with defendant's contention, we have not only to give to section 7, *supra*, a very liberal construction, but we are compelled to inject into it words that we do not feel authorized to do. That section as it then stood provided that the homestead should be subject to attachment and levy of execution upon all causes of action existing at the time of the acquiring of such homestead, and for that purpose such time should be the date of filing in the proper office for the record of deeds, the deed of such homestead, and that such homestead should not be subject to attachment or levy of execution upon any liability created after the passage of said act. If the report of the commissioners in the partition suit had been filed in the recorder's office of DeKalb county, it might by a very liberal construction of the statute be held that that brought it within the provisions of the statute requiring the deed to be filed in the recorder's office; but there is no evidence that this was done. Christopher L. Groomer having acquired the land in section 14 by inheritance, and that in 11 in partition, had no deed thereto to file in the recorder's office, and it was only from the time of filing the deed to the homestead that it was thereafter exempt from levy and sale under attachment and execution upon liabilities thereafter created.

At the time of the inheritance of part of the land and the acquisition of the balance by Christopher L.,

he was not a housekeeper, or head of a family, was not entitled to a homestead, and he could not acquire one simply by becoming the head of a family or housekeeper.

Our position finds support in the fact that the General Assembly in 1887 so amended the statute as to exempt homesteads acquired by descent or devise from attachment, levy, and sale under execution upon all causes of action accruing after the acquisition of such homestead. Acts 1887, page 197. There would have been no necessity for such legislation if the statute of 1865 exempted homesteads acquired by descent and devise from attachment and levy under execution, as in the case of a homestead acquired by deed.

When, however, the act of 1887 became a law, whatever land Christopher Groomer was occupying with his family and using as a homestead not exceeding the number of acres and value prescribed by statute, to wit, one hundred and sixty acres of land with dwelling house and appurtenances, not exceeding the total value of $1,500, became exempt from attachment and levy of execution for all causes of action accruing thereafter, and it makes no difference how the title was acquired, or whether the title to such homestead was in him or his wife. It follows that as plaintiff's cause of action did not accrue until after the homestead was acquired by Christopher L. Groomer, that it was not subject to sale under execution issued upon the judgment rendered in plaintiff's favor against him. Other errors are assigned by plaintiff, but there does not seem to be anything in them which would justify a reversal of the judgment or lead to a different result on another trial. Finding no reversible error in the record, we affirm the judgment.

GANTT, P. J., and SHERWOOD, J., concur.