## CLARK v. THIAS et al., Appellants.

### Division Two, March 31, 1903.

1. **Note:** CONSIDERATION: ALLOWANCE BY PROBATE COURT: SUBSEQUENT SUIT. The allowance by the probate court of a note has the force and effect of a judgment, and the question of whether or not it was supported by a valuable consideration can not be raised in a subsequent suit in the circuit court to have a deed made by the maker set aside in order that the lands may be subjected to the payment of that judgment.

2. ———: COMPETENT WITNESS: AGENT. Where a clerk of the payee of a note has no interest in the note or a suit thereon, he is not an incompetent witness to testify to the circumstances under which the note in suit was given by the deceased maker in lieu of one which had been destroyed by fire. The fact that such maker is dead does not render such agent incompetent to testify.

3. **Homestead:** LANDS ACQUIRED BY HUSBAND PRIOR TO ENACTMENT OF LAW. The homestead statute invested in the head of a family a homestead in lands acquired by him prior to the enactment of the statute. The use of the term "existing estate" in the statute was intended by the act itself to protect such persons as prior to its enactment had secured homes.

4. ———: ESTATES ACQUIRED BY DESCENT. Under the homestead law as amended in 1887 the head of a family was vested with a homestead in estates previously acquired by devise or descent.

5. ———: ———: QUARANTINE: MERGER. The quarantine right of a widow who is occupying the premises of which her husband died seized becomes merged in the fee upon an inheritance by her of the inherited interest of their deceased son.

6. ———: CONTIGUOUS TERRITORY. The head of a family has a homestead not only in the land which he occupies as such, but in all other land contiguous to and used in connection with it, not in excess of 160 acres or the value of fifteen hundred dollars.

7. ———: LANDS HELD IN COTENANCY. The head of a family may have a homestead in lands held in common by cotenants.

8. ———: WIDOW. A widow may be the head of a family in contemplation of the homestead law.

9. ———: FILING DEED FOR RECORD. The homestead was not, under the statute of 1887, exempt from execution for the debts of the homesteader created prior to the filing of his deed for record.

10. **Fraudulent Conveyance**: PLEADING: OTHER PROPERTY. In a suit to set aside a deed to land as having been made to hinder and delay creditors, it is not necessary, in order to constitute a cause of action, that the petition state that the debtor at the time of making the fraudulent deed did not have other property subject to execution.

11. ————: VOLUNTARY DEED. If the deed is voluntary the burden rests upon the party accepting the conveyance to establish the circumstances which will repel the presumption of a fraudulent intent.

Appeal from Franklin Circuit Court.—*Hon. R. Hirzel,* Judge.

REVERSED AND REMANDED.

*John W. Booth* and *Jesse H. Schaper* for appellants.

(1) The trial court committed error in striking out, on motion of plaintiff, over the objection of defendants, that part of defendants' answer averring that the note in controversy was executed by Mary Larkin without any consideration. The defendants other than the administrator, Thias, were not parties to the proceeding in the probate court in the matter of the allowance of the note; hence, the action of the probate court in allowing said note is not *res adjudicata,* and is no ground to support the motion and order of the court striking out that part of defendants' answer which so averred want of consideration for the execution of said note. (2) The trial court committed error in admitting, over the objections of defendants, incompetent testimony of witness Martin, offered by plaintiff. Sec. 4652, R. S. 1899; Banking House v. Rood, 132 Mo. 256. A "party to the contract" has been construed to mean the person who negotiated the contract, rather than the person in whose name and interest it was made. Banking House v. Rood, supra; Brim v. Fleming, 135 Mo. 606. (3) The trial court committed error in finding the issues and rendering judgment for plaintiff under the pleadings and evidence. The bill in this case seeks to set aside an alleged voluntary deed of conveyance

of real estate on the ground that the grantor was indebted to plaintiff on a note, on which the probate court allowed him $219.47; but the bill does not allege the fact that the grantor in said conveyance at the date thereof, owned no other property with which to pay plaintiff's debt. And as this is a substantive or ultimate fact to be alleged in this class of actions, it follows that plaintiff's bill does not state facts sufficient to constitute a cause of action. Bird v. Bolduc, 1 Mo. 701; Lane v. Kingberry, 11 Mo. 402; Walsh v. Ketchum, 84 Mo. 431. (4) The trial court committed error in finding that Mary Larkin had no homestead in the lands mentioned in plaintiff's petition or in any of said lands, and erred in finding the issues for plaintiff. (a) If Mary Larkin had such homestead at the time plaintiff's debt was incurred by her, she had the right to make any disposition of such homestead as she saw fit, for her creditors had nothing to do with her homestead, and the same is beyond their reach either in law or equity. Davis v. Land, 88 Mo. 436; Kendall v. Powers, 96 Mo. 142; Hart v. Leete, 104 Mo. 315; Bank v. Guthrey, 127 Mo. 189; Loring v. Groomer, 142 Mo. 1. (b) No particular estate in land is excluded from the protection of the homestead right. The idea that in order to hold real property exempt from execution or attachment, the head of the family must have a fee simple estate therein, finds no support in the statute. Neither does the idea that the head of a family must have the like estate in each part of the land in which the homestead right is set up, find any support in the statute. Neither does the idea that a specific claim of homestead must be made by the head of a family, find any support in the statute. Kendall v. Powers, 96 Mo. 146; Perkins v. Quigly, 62 Mo. 498; Gentry v. Gentry, 122 Mo. 202; sec. 2695, R. S. 1879. The foregoing statute provides: first, that under the law as amended, the acquisition of the homestead dates from the filing of the deed only in those cases in which the title is by deed; second, that when

the title is by descent or devise, the acquisition of the homestead dates from the time the party becomes invested with the title. Loring v. Groomer, 142 Mo. 1. (c) Exclusive ownership is not essential to a homestead. Whether the land be owned by the husband or wife or by both, the husband is entitled to homestead out of his interest to the full amount and value of the homestead exemption. Hart v. Leete, 104 Mo. 315. Peake v. Cameron, 102 Mo. 568.

*James Booth* and *W. H. Clark* for respondent.

(1) In order for the occupant to have a homestead in the premises, three things must concur: first, the homesteader must be occupying the lands prior to contracting the debt; second, the deed, if title be derived from deed, must have been filed for record prior to the time the debt was contracted; third, the occupant must have been the head of a family. R. S. 1899, secs. 3616, 3622; Payne v. Fraley, 165 Mo. 191; Barton v. Walker, 165 Mo. 25. (2) Mrs. Larkin being a widow, and her homestead, if any, acquired independently of her husband, because at the time of his death there was no homestead law, being subject to the payment of her debts after death, and her creditors having the right to so subject her estate to the payment of their debts, it logically follows that this was the action to institute; and the decree was for the right party. Chapman v. McGrath, 163 Mo. 292. (3) The mere fact that Mary Larkin resided on a part of the premises, and had living with her various children, for various periods of time, having with such children an understanding or agreement that in consideration of services performed by such children she would furnish them with board and clothes, was not sufficient to constitute her the "head of a family" within the meaning and intention of the homestead act. "Head of a family" means a group of persons living together under such circumstances

that there is a duty imposed by law or morality on some such particular person to care for and maintain the others. Since the days of the Patriarchs the term has never been held to include the master and mere servants living under the family roof for a monetary considera- tion. "The proud and happy distinction of being the 'head of a family' can never be attained by virtue of a contract founded on the 'almighty dollar.'" 1 Waples on Homestead and Exemption (1 Ed.), 58-9; Murdock v. Dalby, 13 Mo. App. 41; Ridenhour Gro. Co. v. Marion, 142 Mo. 165. (4) The court did not err in striking out that part of the answer which pleaded no consideration for the note which had been regularly allowed by the probate court. The allowance had the force and effect of a final judgment of a court of record and as such could not be collaterally assailed. Secs. 192-214, R. S. 1899. (5) Granting for the sake of argument, that Mrs. Larkin was the head of a family and entitled to homestead by reason of her occupancy in the one-ninth interest acquired by inheritance from Mike Larkin, yet her homestead could not extend to any other interest in the land than the one-ninth interest so acquired from said Mike. And to allow her to so claim would be in plain contravention of the express letter of the statute. Claims arising by virtue of sentimental construction of the statute are such as ought to be addressed to the Legislature and not to courts. Payne v. Fraley, supra. To allow the exemption as to the four-ninths interest acquired from James Larkin, the deed to which was re- corded long after the debt was contracted and the cause of action accrued, would be to decide this case against respondent in violation of the express provisions of the organic law. Buck v. Ashbrook, 59 Mo. 200; Stivers v. Horn, 62 Mo. 473; Berry v. Ewing, 91 Mo. 395. (6) The court did not err in admitting the testimony of wit- ness Martin. It is well-settled doctrine in this State that the agent must testify as to the terms of a contract made by the agent, even after the death of the other

party, where the agent did not act for a corporation, and where the agent is not personally interested in the subject-matter of the contract.    Baer v. Pfaff, 44 Mo. App. 35; Stanton v. Ryan, 41 Mo. 510; Leeper v. McGuire, 57 Mo. 360; Leahy v. Simpson's Adm., 60 Mo. App. 83. (7)    It was not necessary that plaintiff should allege or prove that at the time of the alleged fraudulent conveyance the grantor had no other property; such a rule would require plaintiff to allege and prove a negative. Defendant did not plead or prove such facts, but tried the case solely upon the homestead theory.    The well-settled rule in this State requires the grantor to prove that he retained sufficient property to answer the demands of creditors.    Walsh v. Ketchum, 84 Mo. 429; Lloyd v. Fulton, 91 U. S. 479.

FOX, J.—The plaintiff commenced this action against the defendants, F. H. Thias, as administrator of the estate of Mary Larkin, deceased, Adella Walz, and Sarah Lucy, in the circuit court of Franklin county, Missouri, February 28, 1899, by filing his petition to set aside a certain deed of conveyance of real estate from Mary Larkin to defendant Adella Walz in trust to herself and her co-defendant, Sarah Lucy, alleged to have been made voluntarily and without any consideration, with intent to hinder, delay and defraud the creditors of said Mary Larkin.    Writs of summons issued, duly executed March 22, 1899, and made returnable to the April term of said circuit court, 1899, and the parties having joined issues, the cause came on for trial at the following September term, to-wit, October 27, 1899; the court found the issues for the plaintiff, and rendered judgment accordingly, and thereupon at the same term of court, to-wit, October 28, 1899, the defendants filed a motion for a new trial which was sustained, and a new trial granted by the court at its December term, 1899. And thereafter at the April term of said court, the plaintiff filed his amended petition, which in substance alleged:

"That F. H. Thias is the public administrator of Franklin county aforesaid, and as such has in charge, under the order of the probate court of the said county of Franklin, made and entered on the . . . day of . . . of the year 189. ., and is administering on the estate of said Mary Larkin, deceased. That on the . . . day of . . . of the year 1894, the said Mary Larkin and one James Larkin, for a valuable consideration, executed and delivered to the firm of Clark & Martin, their certain promissory note, by which, for value received, they promised to pay to said Clark & Martin, one day after date, the sum of $180, with interest thereon from date at the rate of six per cent per annum, compounded annually, and that on the . . . day of November, 1894, said note was accidentally destroyed by fire. And that on August 9, 1895, the said Mary Larkin and James Larkin, well knowing that said note had been destroyed, executed and delivered to said Clark & Martin their certain promissory note by which for value received they promised to pay said Clark & Martin one day after date, the sum of $180, with interest from date at the rate of six per cent per annum. That said last note was so executed and delivered to said firm in reexecution and in renewal of the said note so destroyed by fire. That thereafter said firm of Clark & Martin for a valuable consideration, assigned and delivered said note to this plaintiff. That said Mary Larkin died intestate about the . . . day of . . . of the year . . . Plaintiff states that on February 6, 1899, he presented said note for allowance against the estate of said Mary Larkin to the probate court of said county, and the said adminstrator having waived notice of the presentment of same, the amount due on said note, to-wit, the sum of $219.47, was duly allowed by said court and classified as a demand of the fifth class against said estate, with interest thereon from date of said allowance at the rate of six per cent per annum. That said allowance, together with the interest thereon, is still due

plaintiff and no part of the same has ever been paid.
That at the time of the execution and delivery of said
last-mentioned note said Mary Larkin was the owner in
fee of the following described real estate, in the afore-
said Franklin county, to-wit:   The southeast quarter
of the southwest quarter of section 5, in township num-
ber 41, range 2 west, and the undivided one-half of the
southwest quarter of the southwest quarter and the
fractional part containing 25 acres being the south part
of the northeast quarter of the southwest quarter, all
being in section 5, in the township and range aforesaid.
That on September 23, 1895, said Mary Larkin made
and executed and delivered to defendant Adella Walz,.
her certain warranty deed, by which for a purported
consideration of one dollar and for love and affection,
she purported to convey said premises to said Adella
for the uses and purposes following: that is to say, to
said Mary Larkin's own use during her natural life and
after her decease to the use of her beloved daughter,
Sarah Lucy (one of the defendants herein), all of the
benefits and profits derived from the above-described
lands, after paying all necessary expenses in keeping
the farm in good running order and the taxes that may
be levied on same, which said deed is of record in the
office of the recorder of deeds within and for said county
of Franklin in deed book volume 44 at page 525.   That
as a matter of fact there was no consideration for the
making of said deed, but the said deed was a voluntary
deed made by said Mary Larkin for the purposes and
with the intent to hinder, delay and defraud the cred-
itors of her, the said Mary, and that said grantees in
said deed at the time of the execution and delivery
thereof had full and complete notice of the said intent
of the said Mary.   That the said James Larkin is now
and was at all and singular the times referred to in
this petition, insolvent, and that the said Mary at the
time of her death owned no property other than the real
estate herein described.   Wherefore plaintiff prays that
the title to said premises be divested from defendants

Adella F. Walz and Sarah Lucy and revested in the estate of said Mary Larkin, and that the same be subjected to the lien and payment of plaintiff's said allowance, and for such other and further relief as to the court may seem just and equitable.''

To the above amended petition, the defendants filed their joint answer, admitting the death of Mary Larkin and that F. H. Thias is the administrator of the estate of said decedent; that said Mary on August 19, 1895, executed and delivered to the firm of Clark & Martin her promissory note of that date, on its face expressed to be for value received, and thereby promised to pay to the order of said Clark & Martin one day after date the sum of $180, with interest from date at the rate of six per cent per annum; and that said note was presented and allowed against the estate of said Mary Larkin as alleged in said petition; and that at the time of the execution and delivery of said note said Mary Larkin was the owner in fee of the real estate described in said petition; and that said Mary Larkin at the time in said petition alleged, executed and delivered the deed of conveyance in said petition referred to, and that said deed was recorded, and is of record as alleged in said petition. But defendants deny that the said deed of conveyance was made with intent to hinder, delay or defraud creditors of said Mary. And defendants deny each and every allegation in said petition made not heretofore admitted, and aver that the said note so executed and delivered on August 15, 1895, was by the said Mary Larkin so executed and delivered, without any consideration whatever.

Thereafter on the same day, to-wit, April 16, 1900, during said April term of court, 1900, plaintiff filed his motion ''to strike out all that part of the answer of defendants to the amended petition of plaintiff which pleads that the said note so executed and delivered on August 15, 1895, was by said Mary Larkin so executed and delivered without any consideration whatever for the reason that the consideration is conclusively shown

by the allowance of said note by the probate court of this county and that the said action of the probate court is *res adjudicata.*"

Thereafter on the same day the court sustained the above motion and struck out of the said answer the words: "And aver that the said note so executed and delivered on August 15, 1895, was by said Mary Larkin so executed and delivered, without any consideration whatever." To which ruling and action of the court defendants then and there at the time duly excepted.

Thereafter at the trial of said cause during the April term of said court, 1900, to sustain the issues on his part, plaintiff offered the following evidence:

J. F. S. Martin testified:

"I live at Sullivan, Missouri; I was clerking in a general merchandise store, for Clark & Martin, in '93 and '94, at Spring Bluff, Missouri; in that capacity I had business transactions for that firm with Mary Larkin and James Larkin; they both traded there at different times all the time I was in business there.

"Q. I will ask you to look at that, Mr. Martin (handing witness a paper); did you act for Clark & Martin in taking that note? A. I did.

"Q. Will you state under what circumstances that note was given?

"Objected to by defendants because the petition in this case shows that Mary Larkin is dead, and it appears from this gentleman's testimony that he acted as agent for Clark & Martin; Mrs. Larkin being dead he is not a competent witness to testify in such matters. The objection was overruled by the court, to which action and ruling of the court defendants then and there duly excepted and at the time saved their exceptions. A. I don't think I know how to answer that question.

"Q. Tell us how you got it? A. I went to Mrs. Larkin's house and took himself with me, or he went with me. I made this note and they both signed it, in

my presence.   They signed a note for a like amount as
this about a year, I think, previous to the date of this
note; that first note was for the same amount as this,
$180, given in the year previous to this, some time in
August or September, '94, I think; we made this note as
the other one was—for a like amount—in every way like
the original note with the exception of the date; the first
note was payable to Clark & Martin, signed by Mary
Larkin and James Larkin.   I took that note to Sullivan
with the papers belonging to the Spring Bluff business
and it was destroyed in the fire when the store burned,
some time in the fall of '94; I know that this note I have
here was given in lieu of the note that was destroyed by
the fire."

Plaintiff then read in evidence the note thus de-
scribed by the witness, and the allowance indorsed on
the back, being as follows:

"$180.00                         Sullivan, Mo., Aug. 19, 1895.

"One day after date, we, or either of us promise
to pay to the order of Clark & Martin, one hundred and
eighty dollars, for value received, negotiable and pay-
able without defalcation or discount and with interest
at the rate of six per cent per annum and if the interest
be not paid annually to become as principal and bear the
same rate of interest.

"JAMES T. LARKIN,
her
MARY x LARKIN.
mark.

"Witness for mark, F. S. Martin."

Said note was indorsed as follows:

"Clark & Martin,
"Allowed Feb. 6, 1899,
"$219.47, 6 per cent, 5th class.
"CHAS. F. GALLENKAMP.
"Judge of Probate."

Thereupon plaintiff read in evidence stipulation of
the parties in substance, as follows:

"That defendant Thias is administrator of the estate of Mary Larkin, deceased, as alleged by plaintiff. That Mary Larkin died intestate as alleged by plaintiff. That the records of the probate court of Franklin county, will show that the note mentioned in plaintiff's petition was presented to said court and allowed as a demand against said estate as alleged by plaintiff. That at the date of the execution of said note the said Mary Larkin was the owner in fee simple and was in possession of the real estate in the plaintiff's petition described and that she continued to reside thereon to her death. That said real estate does not exceed 160 acres in extent nor $1,500 in value. That said Mary Larkin made, executed and delivered to the defendant Adella F. Walz, the deed in plaintiff's petition described. That said Mary Larkin did not leave any personal estate or other real estate out of which her creditors could realize their claims. That James Larkin, the other signer of the aforesaid note, is wholly insolvent, of whom nothing can be recovered at law. That the evidence (if admissible) would show: That it was the fixed and well-cherished intention of Mary Larkin, deceased, for many years before the date of the deed here sought to be set aside, to deed and convey the premises to defendant Adella F. Walz, reserving to herself a life estate therein and thereafter a life estate to her daughter, Sarah Lucy, who at all times was the wife of one Matthew Lucy until after the execution of said deed. That at the time of making said deed and long prior thereto, it was the fixed intention of the said Mary Larkin in making said deed, to exclude the vesting of any marital rights of said Matthew Lucy as the husband of Sarah Lucy aforesaid, or the interference on his part with the rights of said Sarah Lucy. That there was a valuable consideration greater than one dollar, but less than the true value of said real estate, moving from said Adella F. Walz to said Mary Larkin, which said valuable consideration was to include the payment

by the said Adella F. Walz of the funeral expenses of the said Mary Larkin at her death.''

Plaintiff rested.

The defendants to sustain the issues on their part offered and read in evidence:

First.    A patent deed from the United States, dated November 1, 1851, granting to James Larkin, of Franklin county, southwest quarter of the southwest quarter of section 5, in township 41, range 2 west, in the district of lands subject to sale at St. Louis, containing 40 acres.

Second.    A patent deed from the United States, dated August 2, 1852, granting to James Larkin, of Franklin county, the northeast quarter of the southwest quarter of section 5, in township 41, of range 2 west, in the district of lands subject to sale at St. Louis, containing 40 acres.

Third.    A deed of conveyance from Lewis B. Parsons and Elizabeth D. Parsons, his wife, dated December 10, 1877, filed for record in Franklin county, November 12, 1881, conveying to Mary Larkin the southeast quarter of the southwest quarter of section 5, in township 41, range 2 west, containing 40 acres more or less, in Franklin county.   Said deed contains covenants of general warranty, reserving all mineral ores.

Fourth.    A quitclaim deed from James T. Larkin, dated June 14, 1892, filed for record in the recorder's office of Franklin county, January 25, 1895, purporting to remise, release and forever quitclaim unto Mary Larkin the southeast quarter of the southwest quarter, also the southwest quarter of the southwest quarter and the south fractional part of the northeast quarter of the southwest quarter, all in section 5, township 41, range 2 west, containing in all 105 acres more or less.

Fifth.    A deed from Mary Larkin, dated September 23, 1895, filed for record in the recorder's office of Franklin county, November 7, 1895, conveying to Adella F. Walz the following described real estate situate in

Franklin county, to-wit: the southeast quarter of the southwest quarter of section 5, township 41, range 2 west, containing 40 acres more or less; and the undivided one-half or one-third, as the case may be, of the following described lands: the southwest quarter of the southwest quarter, containing 40 acres more or less, and the fractional part containing 25 acres, being the south part of the northeast quarter of the southwest quarter, all in section 5, township 41, range 2 west—for the uses and purposes of grantor during her natural life and after her decease to the use of her beloved daughter, Sarah Lucy. Said deed contains covenants of general warranty.

It is unnecessary to set forth in detail the testimony introduced by defendants upon the issue presented, as to Mary Larkin being the head of a family and her occupancy of the premises as a homestead. It will suffice to say that numerous witnesses were introduced on this issue, whose testimony strongly tended to establish the position taken by defendants upon that disputed question.

This cause was submitted to the court upon all the evidence introduced, and it announced the conclusions reached in a written opinion. That we may fully comprehend the theory upon which the learned trial judge disposed of this case, we here quote the opinion, as follows:

"The motion for new trial was sustained in this case heretofore on the ground that Mrs. Larkin had a homestead in land, and if she had such homestead, she could sell or dispose of the same in any manner she desired. The latter proposition is unquestionably the law in this State—but did she have homestead? There is no dispute that Mrs. Larkin had her dower in the lands of her husband, and also her quarantine until dower was assigned, which was never done during her lifetime. The homestead consists of the dwelling house and appurtenances or lands surround-

Vol 173 mo—41

ing the dwelling—and such lands need not be even contiguous. If Mrs. Larkin had a homestead in her husband's lands, then the lands she bought from Parsons in 1877 became part and parcel of her homestead; but if she never had a homestead in her husband's lands, then the Parsons tract never became a homestead, for she never lived on it, but simply used the same in conjunction with the Larkin lands. When James Larkin, the husband of Mary Larkin, died in 1852-3, there was no homestead law in existence in this State. Larkin had simply obtained certificates of entry, and these were never filed for record up to this date. Hence, Mary Larkin never obtained any homestead from her husband —nor did she have any homestead when she bought the Parsons tract. In 1880 she inherited one-ninth interest in the land from her son, Mike, but at that time no homestead could be obtained by inheritance, descent or devise. In 1892, she purchased four-ninths interest in the land from her grandson, James Larkin, but she did not record the deed until 1895, so that her homestead rights, if she acquired such by that purchase (which I do not concede at all) would not begin until 1895, and would be subject to payment of plaintiff's claim, which accrued undoubtedly in August, 1894, when the first note was signed by Mrs. Larkin—so that, in fact, all her lands were subject to the payment of this debt in 1894, and are so now.

"In Massachusetts it is held that a homestead does not exist in lands held in common or by undivided interests. [Holmes v. Winchester, 138 Mass. 542.]

"The right of homestead does not depend on the title of the owner, whether in fee or for life; but the owner must have a good title and deed and have a home on the land, before he can claim homestead. [Bemis v. Driscoll, 101 Mass. 421.]

"Though a widow is entitled to homestead against both heirs and creditors, she can not create a homestead in the lands of her deceased husband. It must have be-

come his right during his life, so that she can succeed to it. [Brown v. Watson, 41 Ark. 309; Patrick v. Baxter, 42 Ark. 175; Harbison v. Vaughan, 42 Ark. 539.] ·

"In the case at bar, the title to the Larkin lands vested at once in the Larkin children, subject to dower and quarantine of their mother, and she could not by *ex post facto* laws become the owner of a homestead in said lands and divest the Larkin children of their title · already acquired, or claim such homestead as against her creditors, and hence, could not sell or dispose of such homestead. I shall therefore readopt the first opinion herein rendered as correct and render a decree for plaintiff accordingly."

The first contention of the appellants is, that the court committed error in striking out that portion of the answer which alleged that the note executed by Mary Larkin was executed without any consideration whatever. This proceeding is not an action upon the note to the end of reducing it to a judgment; but the suit is to cancel and set aside a certain conveyance executed by Mary Larkin; and it is alleged in the petition, and it is admitted that this note was duly allowed in the probate court of Franklin county. If the position taken by appellants is to be maintained, the effect of this answer is to go behind this judgment and show that the note was without any consideration, and thereby destroy the force and power of the judgment rendered. This contention must be ruled against appellants. The allowance of this note by the probate court has the force and effect of a judgment.

The only necessary parties were before the court, it had jurisdiction of the subject-matter and of the persons; if it was improperly allowed, then an appropriate proceeding as contemplated. by section 214, Revised Statutes 1899, must be sought for that purpose. It can not be attacked in this collateral proceeding.

It is next insisted and very earnestly urged, that the court committed error in permitting witness Martin,

who was acting as clerk or agent for Clark & Martin at the time this note was taken, to testify in regard to transactions between himself and Mary Larkin. It will be observed that witness Martin had no interest in the note, nor has he any interest in this suit.

In the case of Stanton v. Ryan, 41 Mo. 510, this court clearly announced the rule, that an agent in making a contract, is a competent witness, notwithstanding the party with whom the contract was made was dead. In that case, the wife was introduced in pursuance of the provisions of the statute which makes her competent in cases where she is acting as the agent of the husband; the party with whom the wife had contracted was dead; the court held she was competent and placed her in the same position as any other agent. The court said: "It can not be gainsaid that if the defendant had given a full delegation of power to an ordinary agent to make a contract for and superintend the building, such agent would have been competent to prove the contract when a dispute arose concerning the same, whether the person with whom he contracted was dead or not. The statute expressly authorizes the wife to give testimony in all transactions where she acted in the matter as agent for her husband, whether she is joined with him as a party to the record or not. There is no distinction recognizable between her and any other agent as regards capacity to be a witness."

To the same effect is the case of Leahy v. Simpson's Admr., 60 Mo. App. 83. The court in that case very tersely announces the rule: "The fact that the agent of an individual makes a contract on behalf of his principal with a third party, who subsequently dies, does not render the agent incompetent to testify in a suit brought by his principal to enforce such contract against the administrator of the deceased. [Baer v. Pfaff, 44 Mo. App. 35.]"

In the case of Baer v. Pfaff, 44 Mo. App. 35, the question, identical with the one urged in this conten-

tion, is very fully and ably discussed. The court in that case very aptly and appropriately applied the rule. It said: "It is insisted that the plaintiff's clerks were incompetent witnesses, in so far as they had personal transactions with the deceased in the sale of goods. We think that the case of Stanton v. Ryan, 41 Mo. 510, settles this question adversely to the defendants. It was there decided that, where a contract was made by an agent, the latter was a competent witness to prove the contract, whether the other contracting party was dead or not. The doctrine of this case was substantially reaffirmed in the case of Leeper v. McGuire, 57 Mo. 360. The subsequent case of Williams v. Edwards, 94 Mo. 447, only decided that where a contract is made by a corporation and its contracting agent dies, this renders the other contracting party an incompetent witness. In construing and applying the statute to that case, the court makes the 'agent' take the place of the corporation, upon the ground that a corporation can only act and speak through its agents and officers. In the case of Robertson v. Reed, 38 Mo. App. 32, the Kansas City Court of Appeals applied the same rule, and the plaintiff was held disqualified to testify, where it appeared that the contract on trial had been made with him by the defendant's deceased agent. But those cases are unlike this. The test to be applied is, would the plaintiff's clerks have been incompetent witnesses at common law? They certainly would. They had no interest in the suit and there is no rule, that we are aware of, that would have disqualified them. Our statute was only intended to modify the common law so as to permit a party in interest to testify in his own behalf, provided the other party to the contract in issue and on trial is alive, or is not shown to be insane. If either party to the contract is dead or shown to be insane, the statute has no application, and the common-law rule must govern."

The case of Banking House v. Rood, 132 Mo. 256, relied upon by appellants, is not in conflict .with the cases herein referred to. On the contrary, the case of Stanton v. Ryan, supra, is quoted approvingly by nearly all the cases upon the questions involved in this particular contention. Martin was not a party in interest, either in the note or suit, hence, we are of the opinion that he was a competent witness.

This leads us to the discussion of the opinion of the esteemed and learned trial judge. It is announced in this opinion, that James Larkin, husband of Mary Larkin, having died in 1852 or 1853, there was no homestead law in existence in this State, hence the widow Mary Larkin did not succeed to any homestead right in the land of which her husband died seized. It was said by this court in case of Miller v. Talley, 48 Mo. 503, that the quarantine rights of the widow, "can hardly be called an estate, though it is somewhat analogous to an estate at will." To the same effect is the case of Gentry v. Gentry, 122 Mo. 202, where the court says that the widow "has but a 'right,' a 'privilege,' an interest temporary, evanescent and fugitive in its nature; akin to a tenancy at will; determinable at the option of the heir." With the views we entertain in this case, it is unnecessary to determine the character and nature of the quarantine rights of the widow. It is sufficient to say that the announcement of the principle in the opinion of the trial judge, that for the reason "that there was no homestead law in force at the time of the death of the husband, James Larkin, the homestead right could not subsequently attach to the land, in behalf of the widow," is not a proper interpretation of the law upon that subject. If the quarantine rights of the widow in respect to this land, was in fact an estate in land, and she occupied it and was the head of a family, that was an existing estate when the homestead law went into effect, and such existing estate clearly falls within the protection of the homestead statute. The very terms

of the statute clearly indicate its application to existing estates, when the homestead law first went into effect.

Section 7, General Statutes 1865, page 450, provides: "Such homestead shall be subject to attachment and levy of execution upon all causes of action existing at the time of the acquiring such homestead, except as herein otherwise provided; and, for this purpose, such time shall be the date of the filing in the proper office for the records of deeds, the deed of such homestead, and (in case of existing estates) such homestead shall not be subject to attachment or levy of execution upon any liability hereafter created."

It is clear from this statute, that the homestead right does not depend upon the fact that the homestead was acquired after the enactment of the law, but, as before stated, its terms clearly make it operative upon existing estates at the time of the enactment of the law. To hold otherwise would simply render the homes of a large class, who happened to acquire their homesteads prior to the taking effect of the homestead statute, subject to attachment and execution.

The use of the terms "existing estates" was intended by the act itself to protect persons, who, prior to its enactment, had secured homes.

Again, the trial judge reaches the conclusion in his opinion, that as there was no law in force in 1880, when Mary Larkin took by descent from her son, Mike Larkin, the one-ninth interest in fee of the lands she was then occupying, that for that reason no homestead could be claimed in said one-ninth interest. In answer to this conclusion announced in the opinion, we will say that the homestead law of 1879 was amended in 1887, and as amended went into effect June 19, 1887. By this amendment the omission in the former statute was supplied, and estates by devise or descent were included within the protection of the statute. The same views as herein expressed, as to the application of the statute as to ex-

isting estates, are equally applicable to estates secured by devise or descent. As to the application of the amended statute of 1887, to the one-ninth interest held by Mary Larkin, by descent from her son, Mike, the case of Spratt v. Early, 169 Mo. l. c. 368, is decisive of this contention. GANTT, J., in a very able and exhaustive review of this question, says:

"This presents the most important question on this record. The evidence tends to show, without contradiction, that Mrs. Duffy inherited the Dawson lot from her mother, Mrs. Carr, in the year 1872, and had lived on it and occupied it as her homestead continuously from 1872 until she rented it by the month to O'Connor in the summer of 1894. Prior to the amendment of the Homestead Act (section 2695, ch. 39, R. S. 1879) by the Act of March 24, 1887 (Laws 1887, p. 198), homesteads acquired by descent or devise were not exempt from attachment and levy under execution as were homesteads acquired by deed. [Loring v. Groomer, 142 Mo. 1.] But by the express provisions of said last-mentioned act, homesteads held by descent or devise fell within the protection of the statute 'from the time the owner becomes invested with the title thereto; and in case of existing estates such homestead shall not be subject to attachment or levy of execution upon any liability hereafter created.' In Loring v. Groomer it was further said such existing homestead, occupied by a head of a family, not exceeding the amount and value prescribed by statute, became exempt after the Act of 1887, from attachment and execution on all causes of action accruing thereafter, and it made no difference how it was acquired or whether the title thereto was in him or his wife. [142 Mo. loc. cit. 12; Peake v. Cameron, 102 Mo. 568, 574.] Mrs. Duffy, after the Act of 1887 became the law of this State, owned a homestead in fee simple in the lot in suit and was such owner when she married her co-defendant, Daniel Duffy, her present husband, in 1879. By her marriage to Duffy, who con-

tinued to occupy said homestead with her, she did not forfeit her homestead exemption. [West v. McMullen, 112 Mo. 410; Hufschmidt v. Gross, 112 Mo. 649.]"

This one-ninth interest inherited from Mike Larkin, was an interest in the lands of which James Larkin died seized, and the widow, at the time of this inheritance, was occupying the premises. We take it that it is clear that as to the one-ninth interest, the quarantine right of the widow, being the lesser estate, was merged in the fee she inherited from her son.

We have carefully considered all the evidence in respect to Mary Larkin being the head of a family at the time of the execution of the deed to the co-defendants, Lucy and Walz, and as to her occupancy of the premises, and have reached the conclusion that the testimony indicates clearly that she was the head of a family in contemplation of the homestead law, in force at the time. Having reached this conclusion, she had a homestead right in the one-ninth interest inherited from her son when the statute went into effect in 1887, long prior to the execution of the deed sought to be set aside. It is said by the trial court in its opinion, that she did not have any homestead in the Parsons land, because she never occupied it; this conclusion might be correct if she had never inherited the one-ninth interest; but in 1887 she was occupying the premises in which the one-ninth interest was included; this occupancy of this interest drew to it, being contiguous and used in connection with it, the Parsons land, and the whole of it not exceeding one hundred and sixty acres, or the value of fifteen hundred dollars.

We think the trial court erred in its conclusion that this land being held in common, no homestead right could be claimed. The authorities upon this proposition are somewhat in conflict; but this court in numerous cases has announced the rule that the homestead laws should be liberally construed to the end of accomplishing the beneficent purposes for which they were

enacted. With these views we fully approve what is very aptly and appropriately said in Thompson on Homesteads and Exemptions, section 181, page 156, in which the author approvingly quotes from Freeman on Cotenancy and Partition. It is said: "A careful and judicious writer, who has given to this subject an attentive consideration, after examining the cases, expresses his own views as follows: 'We see no sufficient reason, even in the absence of statutes directly bearing upon the subject, for holding that a general homestead act does not apply to lands held in co-tenancy. The fact that a homestead claim might savor of such an assumption of an exclusive right as is inconsistent with the rights of the other cotenant, and that the maintenance of such claim might interfere with proceedings for partition, form no very satisfactory reason for denying the exemption. If the rights of the other cotenant are threatened or endangered, he alone should be permitted to call for protection and redress. The law will not sanction any use of the homestead in prejudice of his rights. But, as long as his interests are respected, or so nearly respected that he feels no inclination to complain, why should some person having no interest in the cotenancy be allowed to avail himself of the law of cotenancy for his own, and not for a cotenant's gain? The homestead laws have an object perfectly well understood, and in the promotion of which courts may well employ the most liberal and humane rules of interpretation. This object is to assure to the unfortunate debtor and his equally unfortunate, but more helpless, family the shelter and influence of home. A cotenant may lawfully occupy every parcel of the lands of the cotenancy. He may employ them, not merely for cultivation or for other means of making profits, but may also build houses and barns, plant shrubs and flowers, and surround himself with all the comforts of home. His wife and children may of right occupy and enjoy the premises with him. Upon the land of which he is but

a part owner he may, and in fact frequently does, obtain all the advantages of a home. These advantages are none the less worthy of being secured to him and his family in adversity because other co-tenants are entitled to equal advantages in the same home. That he has not the whole is a very unsatisfactory and a very inhumane reason for depriving him of that which he has.' ''

This leads us to the claim of homestead, by Mary Larkin, in the four-ninths interest obtained by deed to her by James Larkin in 1892. It will be observed that this deed was not filed for record until January 25, 1895. The statute in relation to homesteads, heretofore mentioned, provides, that such homestead shall be subject to levy of execution on all causes of action existing at the time of acquiring the homestead; and it further expressly declares, that "the time of acquiring the homestead shall be the date of the filing of the deed in the recorder's office." The original debt of which the note allowed was simply a renewal, according to the testimony of Martin, was an existing debt in August, 1894, long prior to the filing of the deed to the four-ninths interest obtained from James Larkin. We have reached the conclusion as to this four-ninths interest that Mary Larkin was not entitled to a claim of homestead against the debt evidenced by the judgment in this suit. The statute must control; it clearly fixes the date, and if Mary Larkin failed to have her deed filed for record it was her misfortune. The law must be followed.

This brings us to the last question involved in this controversy. It is insisted by appellants, that the petition fails to state a cause of action, in that it does not state that Mary Larkin did not have, at the time of the execution of the deed, other property subject to execution, and that plaintiff failed to introduce any proof in that respect. Upon this contention, we will say, that it is apparent from the record in this cause that the learned counsel on either side did not try this case with

that subject in view. The petition in this case seeks to set aside this deed on the ground that it was executed with the intent to hinder and delay creditors. It was not necessary, in order to constitute a cause of action, to make the averments as to the other property, as contended by appellants. It is true, even as to a voluntary conveyance, that the mere fact of its being voluntary does not render it absolutely void. That is a question of fact to be determined from the conditions surrounding the party at the time of making the conveyance. The true rule seems to be that if the conveyance is voluntary, the burden rests upon the party accepting the conveyance to establish the circumstances which will repel the presumption of a fraudulent intent. "The conveyance stands condemned as fraudulent unless the facts which may give it validity are proved" by the donee in such conveyance. [Walsh v. Ketchum, 84 Mo. 1. c. 430.] The court in that case says: "It has never been held in this State, when the point was involved in the decision that a voluntary conveyance, as to existing creditors, is void, but the contrary has been affirmed in the case of Bird v. Bolduc, 1 Mo. 702, and Lane v. Kingsberry, 11 Mo. 402. In the latter case it is said that 'the doctrine that a voluntary conveyance is not fraudulent *per se* as to existing creditors, though opposed by some, is established by a great weight of authority. The bona fides of every such conveyance is a question of fact to be ascertained by a jury under all the circumstances attending it.' The rule, as laid down by Mr. Bump, has been recognized by this court in the case of Potter v. McDowell, 31 Mo. 62, and Patten v. Casey, 57 Mo. 118, in the latter of which cases it is said that a voluntary conveyance made by a debtor in embarrassment or doubtful circumstances, without ample means outside of the particular property conveyed, for the satisfaction of his then existing debts, though made without any specific intent to defraud, is fraudulent in law as to all who were creditors at the time of the execu-

tion of the conveyance, and whose debts remain unpaid and incapable of collection in the ordinary course of proceedings. As asserting a different doctrine our attention has been called by counsel to the case of Hurley v. Taylor, 78 Mo. 238, where in the report of the commissioner, it is said: 'The deeds being without consideration were void as to existing creditors.' It will be sufficient to say of this case that the question as to whether the voluntary conveyances referred to were or were not void, was not the point in judgment on the appeal, and the remark there made is mere *obiter,* and if it is to be understood as announcing the principle that a voluntary conveyance as to existing creditors is absolutely void, it does not meet with our sanction.''

Upon the question of how much property Mary Larkin had, other than that in the conveyance, at the time of its execution, the testimony is very slight. As heretofore stated, it is clear that this case was not tried upon that theory; two or three witnesses do testify about some mules, horses and hogs on the farm, but as to their value, nothing is said, or whether such personal property was exclusive of property she could claim as exempt, it is not disclosed. The evidence on this subject, so far as the record discloses, was not sufficient to warrant the court in finding that the conveyance was not executed with intent to hinder and delay creditors.

The judge of the circuit court tried this case, as indicated by his opinion, upon an erroneous theory, and to the end that the parties to this suit may not be deprived of any of their rights, and to afford an opportunity to them of introducing all the evidence obtainable, as to the financial condition of Mary Larkin at the time she executed the conveyance to the four-ninths interest, to which she had no claim of homestead, this cause is reversed and remanded for a new trial, in accordance with the views herein expressed. All concur.