# CHARLESTON

## BROWN v. CLICK.

Submitted January 30, 1906.    Decided February 27, 1906.

1. CANCELLATION OF INSTRUMENTS—*Evidence.*
   To cancel a note and deed of trust to secure it on the claim that they were given for a contemplated loan, and that the loan was never made, the oral proof must be very full, clear and convincing. (p. 173.)

2. WITNESS—*Deceased Person—Agent.*
   An agent contracting in behalf of his principal with a person since deceased is a competent witness in behalf of his principal against the estate of the deceased party to prove the transaction. (p. 174.)

Appeal from Circuit Court, Putnam County.

Bill by H. C. Brown and others against George Click and others.    Decree for plaintiffs, and defendant Click appeals.

*Reversed.*

RANKIN WILEY and W. R. GUNN, for appellant.

J. W. ENGLISH and CHAS. E. HOGG, for appellees.

BRANNON, JUDGE:

H. C. Brown and his wife, E. R. Brown, made a note to C. Click for $400 and a deed of trust on a house and lot to secure it, and when the trustee gave notice of sale under the trust they filed a bill of injunction in the circuit court of Putnam county to enjoin the sale and cancel said note and deed of trust, and a decree was entered annulling said deed of trust, from which decree an appeal has. come to this Court.

The statement of the bill is, that both Brown and his wife owned separate real estate, and that a suit was brought by a creditor of Brown to subject the real estate of both him and his wife to his indebtedness, and that an agreement was made with Click to obtain a loan from him of four hundred dollars, in case the result of the suit should render it necessary, and that the note and deed of trust were made and delivered to one Wartenburg, who took them to Click and left them with him to raise money upon, should it become necessary to pay such indebtedness; but that while the result of the suit was

to subject H. C. Brown's property, it did not subject his wife's property, and he concluded to let his property go, and not encumber his wife's house and lot, and so Click never furnished any money at all.

The heavy burden of proof to defeat these evidences of debt rests on the plaintiffs. If we do not call for full proof in such cases, what do solemn writings proving debts amount to, especially when their owner's lips are closed in death? This plain principle of justice stares us in the face at the outset of the case. Click held these papers five years and a half, and not until his death do we hear of their defence. Is it not most remarkable that both Brown and his wife would let those papers lie so long in Click's hands? Strange that the wife would so long let them hang over her little home, even if her husband would be so negligent. Counsel for Brown says that it counts against Click's estate that he let the debt stand so long and did not collect interest. He was a money lender and would prefer the debt to stand. I think the fact argues more strongly against Brown. Why leave these dangerous papers so long in Click's hands, when it was a deep concern on the part of the Browns to demand them? The possession of these papers is a controlling factor in the case. The evidence of Brown and wife that they received no money counts for naught against a dead man's estate. Wartenburg's evidence sustains the bill, he saying that the Browns got no money of Click. Wartenburg is a brother-in-law of Brown, and displays active interest in the matter. He is contradicted by Jacob Eyler, who swears that he saw Click count out $400 to Wartenburg to be delivered to the Browns, and saw Wartenburg deliver note and deed of trust to Click. After Click's death when his property was being listed this note was found, and a question arose as to its solvency, and a witness said to Wartenburg that he had written it and ought to know about it, and Wartenburg said the note was good and bound the property of Mrs. Brown. Two other witnesses swear to this. Reiber's evidence is that he heard Wartenburg say that he thought Brown had paid the note, and that it must have been four or five years since they got the money. The fact that the note dates 17th January, and the deed of trust the 27th is a circumstance against Browns, indicating that Click would not take the personal

note and then later the trust was made. And early in the case, it strikes anyone as highly improbable that Wartenburg, a business man of capacity, an attorney, would leave these papers in Click's hands, he living sixty miles distant, before any money was got. Stranger still that Brown and his wife would consent to it. People are not often so negligent in a matter so important. Strange, too, that Wartenburg would, as the friend of Mrs. Brown, make a trip of that distance before any suit was brought to charge her property. The debt that was to come on Mrs. Brown's property was only $180. Why arrange to borrow $400? This is an answer to that pretense. It speaks strongly against Wartenburg's evidence that when he was present at the inspection of Click's papers after his death, he did not declare that the Browns had got no money of Click. Why did he not, then and there, say that that note and that deed of trust were not valid? If he knew that he had taken them to Click to be effective only in case money should be borrowed of him; if he had not gotten any money from Click, why did he not, on the spot, protect his sister-in-law from an unjust demand? He does not pretend that he made any such declaration. But he said the debt was good. He said the trust was solvent, treating it as a just debt.

The question is raised whether Wartenburg being an agent of the Browns is competent to give evidence against Click's estate. We think that his evidence is competent. Section 23, chapter 130, Code 1899, declares that no person shall be excluded as a witness by reason of interest, thus abrogating the common law rule. The section states specific exceptions to competency, and does not disable on account of agency. To be incompetent the witness must fall within an exception. It is held that an agent contracting with a party since dead is competent in behalf of his principal to prove the contract. *Clark* v. *Tias*, 173 Mo. 628, 73 S. W. 616; *Dawson* v. *Mombles*, 78 S. W. 823.

We reverse the decree, dissolve the injunction and dismiss the bill.

*Reversed.*